SMITH TURNER, *v.* THE NORTH CAROLINA R. R. COMPANY.

Where an officer in the military service of the Confederate States, whilst absent from such service contracted with a Rail Road Company to transport him to the headquarters of the army in order to report to the Commander-in-Chief, and received personal injury on the route by the negligence of such Company; *Held*, that because then and there engaged in an act of hostility to the United States, he was not entitled to recover damages.

Such defence arises upon the plea of the General Issue.

(*Martin* v. *McMillan*, *ante* 486 cited and approved.)

CASE, tried before *Tourgee, J.*, at Spring Term 1869 of the Superior Court of ALAMANCE.

The plaintiff showed that at the time of the occurrence (April 21st, 1865) he was a citizen of Virginia, and an officer of the Confederate army; and that upon the fall of Richmond, a few days previously, he had escaped from a Confederate hospital there, without having been captured or paroled; that he came from Richmond to the neighborhood of the Company Shops in Alamance County, and on the 21st of April, 1865, took passage in a train belonging to the defendant for Greensboro; and that his object in going to Greensboro was to report to General Joseph E. Johnston, commanding the Confederate forces in this department at that time.

The personal injuries of which he complained were received upon that train, through the alleged negligence of the officials of the Company.

The Court thereupon, at the instance of the counsel for the defendant, intimated an opinion that the plaintiff could not recover, by reason of the unlawfulness of the errand on which he was going at the time of the alleged injury: he then and there being an officer of the Confederate army, in the line of his duty as such, upon his way to report to his superior, and so, engaged in an act of hostility to the government of the United States.

Thereupon the plaintiff submitted to a non-suit, and appealed.

*Graham*, for the appellant.

1. The defence made requires to be set forth by a Plea in abatement; and is not competent under the General Issue. 1 Chitty 446, 448, 2 Abbott p. 25.

2. The defendant, being *in pari delicto*, cannot set up such a defence. Does civil war dissolve society, and destroy the legal remedies of insurgents against each other ?

3. As matter of public history, at the time the injury in question was inflicted, there were negotiations for peace on foot between General Sherman and General Johnston; and a truce covered the country between the Shops and Greensboro;

:and peace was proclaimed by those parties on the 26th of April thereafter. The presumption therefore is, that the plaintiff ,did not intend hostility to the United States by his action, !but only to place himself in a situation to be surrendered.

4. The Ordinance of 18th October 1865, proclaimed the whole body of laws in North Carolina (except so much as was ·intended to support the civil war) to be and to have been in force; ;and as matter of common observation, the greater part of the litigation now existing arises from torts and contracts that .arose during the war,

*Phillips & Merrimon, contra.*

The only question is, whether an officer of the Confederate ;States army, can, in a Court under the United States, enforce .against the party transporting him *to the field*, the ordinary .duties of diligence as to speed or safety of carriage, demand- .able by passengers? Would such Courts entertain suits for ·failure to transport safely Confederate regiments, which ·thereby failed to be at a certain battle; or, say, Confederate .ammunition or army stores which by not arriving crippled an .army? We do not speak of cases of trespass, much less of breaches of the peace, against such persons, nor in any manner ·of their personal rights, except for damages occasioned by *neg- .ligence of their right to personal security whilst engaged in an act of hostility.* Whether this be by loyal persons or by persons ·*in pari delicto* these Courts may well say, "Look *ye* to it, we ·will be judges of no such matters!

The character of the act by which an officer of the army of Virginia, which at that time had been surrendered, who found ;himself in a district covered by a truce, was seeking.an oppor- tunity to increase the strength of another, and that the only ·considerable Confederate army then in the field, need not be .enlarged upon. *Prima facie*, it was hostile. If it *might* .have been explained by evidence, it was not.

It may not always be necessary, in order to recover damages :for injury, that the passenger shall have paid or engaged to pay

Turner v. The N. C. R. R. Co.

fare; but it is necessary that he shall plead and prove that he was "lawfully" on the Road. *Darby* v. *R. R. Company*, 14 How. U. S. 468, 4 Rob. Pr. 785, *Lygo* v. *Newbold*, 34 Eng. L. and E. 507.

READE, J. The Court in which the plaintiff seeks redress for an alleged injury, is a Court of the Government of one of the States of the United States. The plaintiff was engaged in a rebellion against the Government of the United States, and having for a time absented himself from the service of the Rebellion, he contracted with the defendant to convey him to the field of active operations, that he might report for such service again; and he complains that the defendant was guilty of negligence in transporting him, and that thereby he was damaged; and thereupon he asks that the Court will enforce his claim, and help him to redress.

If the Rebellion had been successful, and a government had been founded upon that success, it would doubtless have been legitimate for the courts of such government to adjust the rights of those who had been engaged as its agents in establishing the government. But will the Courts of the government which was attempted to be destroyed, interfere to redress one of the insurgents who was disabled in the very act of hostility to the government whose aid he now seeks? If the defendant, who is alleged to have committed the injury, was a friend of the United States, it would seem to be an ungenerous discrimination to subject him to damages for an act of which his government had the benefit; and if the defendant was a co-rebel with the plaintiff, and they were *in pari delicto*, the government would consult its dignity, and not interfere in their dispute.

But this must be understood to be restricted to acts clearly rebellious, or intimately connected with the Rebellion, and in aid of it; for, very clearly, the present Courts will take cognizance of all matters of a civil nature between rebels, not intimately connected with and in aid of the rebellion. In the view of the Courts of the present Government, the service in

34

which the plaintiff was engaged was illegal. The act of going to the field of operations was illegal, and the contract of the defendant to aid him by carrying him to the field, was an illegal contract, and upon the supposition that both parties were rebels,—the most favorable one for the plaintiff—there can be no recovery upon it. *Martin* v. *McMillan, ante* 468.

The objection was properly taken on the plea of the general issue. There is no error.

PER CURIAM.                    Judgment affirmed.

NOTE.—As some misapprehension exists as to the extent of the principle administered by the presiding Judge upon the trial of the case, below, the Reporter adds that during the same term of Alamance Court, in the case of *Ireland* v. *The N. C. R. R. Company,* (being a suit for damages occasioned by the same negligence that injured the plaintiff in the case above,) the plaintiff, who was also shown to be an officer of the Confederate States army, under the instruction of his Honor recovered a verdict for $2,000, the defendant having failed to show that *he* was then going in order *to report to General Johnston*; also, that at the same term, in the case of *Clark, Adm'r.,* &c., v. *The Raleigh & Gaston R. R. Company*; it was shown that the intestate was an officer of the Confederate States army at home on furlough, and that he was killed by the negligence of officials of the defendant, whilst returning home from a visit to friends. Under the instructions of his Honor, the plaintiff recovered a verdict for $3,000.

All these cases were conducted by the same counsel.