This is an action of tort arising out of contract for personal injuries alleged to have been received by the plaintiff, 6 April, 1900, by negligence of the defendant while traveling on its road. The complaint avers that the plaintiff was a passenger on said railroad under a contract by it to carry the plaintiff for a valuable consideration. The defendant in its answer, among other things, avers that the plaintiff was a "trespasser on its train, having tendered to defendant no ticket, money or compensation whatever for its fare, only a free pass which had expired 1 January previously by its own limitation," and which further had on its back a stipulation exempting the company from liability under all circumstances for injury to his person or loss or damage to his baggage.
The plaintiff testified that he was "editor of the Carthage (511)Blade, a newspaper published at Carthage. In 1899 I made a contract with the defendant to publish its time-table in my paper as the consideration for the pass. I did publish the time-table and the defendant agreed to continue the contract and renew the pass for 1900." It is true, he said he told the conductor he would pay the fare, but upon his making the above statement the conductor accepted him as a free passenger.
Upon this evidence the motion for judgment as of nonsuit should have been granted. There is no lawful contract of passage, and the only right the plaintiff could claim against the defendant is that the defendant should not wilfully and wantonly injure him. Cook v. R. R., 128 N.C. 333. Laws 1891, ch. 320, sec. 4, provides that "If any common carrier subject to the provisions of this act shall directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered or to be rendered in the transportation of passengers or property subject to the provisions of this act than it charges, demands, or receives from any other person or persons for doing for him or them a like and contemporaneous service *Page 362 
in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination." Section 25 of said chapter contains the exceptions which permit handling free and at reduced rates property of the United States, State, or municipal governments, or for charitable purposes, or to or from fairs and at exhibits thereat, and permits "the free carriage of destitute and homeless persons transported by charitable societies, and the necessary agents employed in such transportation, or the free transportation of persons traveling in the interest of (512) orphan asylums or any department thereof, or the issuance of mileage, excursion, or commutation passenger tickets. Nothing in this act shall be construed to prohibit any common carrier from giving reduced rates to ministers of religion, or to municipal governments for the transportation of indigent persons, or to inmates of National homes or State homes for disabled volunteer soldiers and of soldiers and sailors orphan homes, including those about to enter and those returning home after discharge, under arrangements with the boards of managers of said homes; nothing in this act shall be construed to prevent railroads from giving free carriage to their own officers and employees, or to prevent the principal officers of any railroad company or companies from exchanging passes or tickets with other railroad companies for their officers or employees."
These exceptions are very liberal, but they do not embrace newspaper editors. Subject to the liberal exceptions just recited, the General Assembly deemed that free transportation or any other discrimination was so much against public policy that a violation of the statute was made punishable with a fine "not less than $1,000 and not exceeding $5,000" for each offense. Nothing could be more clearly a discrimination than the ground upon which the plaintiff asked for and received free passage on this occasion, to wit, that for the year previous he had advertised the schedule of the defendant company in his paper and had received therefore a free pass over its line for the previous year, and that this contract had been renewed for the year then current. It does not appear what was the value of the advertising done, charging for the space at the same rates as would be charged others; but let it be what it may, it could not amount exactly "neither more nor less," to the value of a free pass to travel ad libitum, an unstipulated number of miles over the defendant's road. Besides, it was an illegal (513) discrimination to sell the plaintiff transportation on credit and not payable in money.
This statute was before this Court and the clear meaning of the statute and the duty of the Court to enforce the public policy indicated by its unequivocal terms were stated in an exhaustive and able opinion by *Page 363 Mr. Justice Montgomery, S. v. R. R., 122 N.C. 1052, 41 L.R.A., 246. In the concurring opinion of Mr. Justice Douglas, in that case, it was stated that the number of free passes issued in this State per year was understood to be over 100,000, and after deducting the free passes issued in the cases allowed by the act, over $250,000 of transportation was given away each year, mostly to the classes best able to pay, and that this quarter of a million dollars was perforce added to the fares of those who paid their way. This was to show the public policy which required that such discrimination should be forbidden.
Sections 4 and 25, ch. 320, Laws 1891, above quoted, were copied from the act of Congress forbidding such discriminations, and the rulings of the Interstate Commerce Commission and of the Federal courts thereon have been to the same effect as our own, many of those decisions being cited by Justice Montgomery in S. v. R. R., 122 N.C. 1063-1067, 41 L.R.A., 246. At page 1060 it is well said: "The thing which was denounced by the statute and for which the defendant is indicted is not the act of giving the free pass, the mere handing to the passenger the piece of paper on which was written the privilege of riding free, but the actual transporting the favored passenger without charge or the paymentof fare. The law would be violated when no pass was actually issued, if the passenger was carried free. The favored passenger might be known to the conductor, or be known to him by preconcerted signs, or mileage-books distributed gratis, or sold at reduced rates, and (514)in other ways."
The plaintiff knew that the defendant had no right to make a contract with him to transport him free an unlimited number of miles for an advertisement which in any aspect would not be the exact rate charged all other passengers. He knew that the statute denounced such attempted contract as unlawful and punishable with a fine "not less than $1,000 nor more than $5,000." While the plaintiff was not himself made indictable (as in some States), he knew that the contract was unlawful, and he cannot now come into a court of justice and ask that the court shall give him compensation for damages sustained by the negligent breach of the contract of safe carriage. That presupposes a lawful contract, and he knew that this was an unlawful contract. He and the defendant are in pari delicto, and the Court will leave the parties to settle their own controversy over damages for breach of a contract forbidden by law.
In Cook v. R. R., 128 N.C. 333, a tramp was stealing a ride. He was on the train unlawfully. In Pierce v. R. R., 124 N.C. 83, 44 L.R.A., 316, a boy had jumped on a switching train and was riding thereon contrary to the town ordinance. The Court held that the company was liable in such cases only for any wilful or wanton injury *Page 364 
inflicted by the employees of the company. Here, the plaintiff was on the train illegally, and against a prohibition more severe than the violation of a town ordinance against the boy or the stealing of a ride by a tramp. To same purport, R. R. v. Burnseed, 70 Miss. 437, 35 Am. St., 656, and notes; Hardyer v. R. R., 45 Kan. 379, and cases cited. The plaintiff is an educated, reputable gentleman, a member of an honorable profession, but being on the cars illegally, seeking free transportation, or at least discrimination in rates, contrary to the prohibition of the (515) statute, his rights as against the company are the same as those of others who were also riding contrary to law. He neither shows nor avers wilful, wanton, or malicious injury, and cannot recover.
In S. v. R. R., 122 N.C. 1052, 41 L.R.A., 246, the defendant set up the plea of ignorance of the law, but the Court said every one was fixed with knowledge of the law. The plaintiff has had the additional advantage of the notice given by the construction of the statute in that case. In a subsequent case, S. v. R. R., 125 N.C. 666, the Court repeated that free transportation (or reduced rates), except in cases allowed by the statute, "would be an undue preference, forbidden by the statute, equally whether it was given upon a free pass from an official, or by a verbal order, or upon a ticket or mileage-book, not in truth paid for, but donated by the company. It is the fact of discrimination, and not the method by which it is done, which constitutes the offense." Subsequent to these decisions, the General Assembly reenacted these sections as section 13 and 22, chapter 164, Laws 1899, with no substantial change, though some other sections were repealed.
The constitutions of eleven States — Alabama, Arkansas, California, Florida, Kentucky, Mississippi, Missouri, New York, Pennsylvania, Washington and Virginia — prohibit the issuing of free passes or giving reduced rates to any member of the Legislature or other officeholder whatever, and some of these constitutions, like the Federal statute and our statute and the statutes of yet other States, as Colorado, Massachusetts, North Dakota, Wisconsin, and others, forbid the issuing of free passes or reduced rates to any one, whether officeholder or not, with exceptions similar to those enumerated in our statute, above set out. Indeed, the constitutions of four States — New York, Missouri, California, and the recently adopted constitution of Virginia — (516) make the acceptance by any officeholder whatever of a free pass from a railroad or telegraph company, or other discrimination in his favor, a forfeiture of office. This recital will serve to show the importance and general acceptance of the public policy of equality in treatment by quasi- public corporations whose infringement our statute punishes with a fine "not exceeding $5,000," and whose observance it is the duty of all courts to enforce. The denunciation of the statute is *Page 365 
directed against discrimination in the exercise of a quasi- public function which public policy demands shall be discharged with absolute impartiality and equality — "with equal rights to all and special privileges to none."
We were cited to many authorities holding ineffectual stipulations upon the back of free passes exempting the common carrier from liability for injuries sustained by the holder thereof. These authorities are conflicting (4 Elliot R. R., sec. 1608), and can be considered only when the pass is issued in one of the cases permitted by our statute. It has no application to a case like this, where the contract of free carriage is illegal and the parties are in pari delicto.
This is a stronger case for the defendant than Turner v. R. R.,63 N.C. 522, in which a soldier contracted with a railroad company for transportation to Johnston's Army to serve against the United States and was injured en route by negligence of the company, and it was held that he could not recover damages, Reade, J., saying that the contract of carriage being illegal, the parties "were in pari delicto," and the court "would consult its dignity, and not interfere in their dispute." To same purportMartin v. Wallace, 40 Ga. 52; Redd v. R. R., 48 Ga. 102; R. R., v. Redd,54 Ga. 33.
This is the first case in which the illegal discrimination is set up by the common carrier, but it so happens that by the lapse of time it is now protected from indictment by the statute of limitations. In refusing to grant judgment as of nonsuit, there was (517)
Error.