HENRY T. KING v. RALEIGH AND PAMLICO SOUND
RAILROAD COMPANY.

(Filed 1 April, 1908).

1. **Contracts — Bought Editorials — Immoral Consideration — Public Policy.**

   A contract with the editor of a newspaper that he was to be paid by defendant railroad company for his editorials is based on an immoral consideration and not enforcible.

2. **Same—Carrying Municipal Bond Issue.**

   Compensation cannot be recovered upon a contract to aid in carrying an election for a bond issue. Such contract is against public policy and void.

3. **Same—Pleadings—Demurrer—Good and Unlawful Considerations**
        A demurrer to a complaint in a suit brought for the recovery of
        the value of services rendered should be sustained when the al-
        leged considerations are immoral and against public policy or so
        mixed up with them as to poison the whole.

ACTION tried before *Lyon, J.,* and a jury, at October Term,
1907, of PITT.

Defendant appealed.    The facts are stated in the opinion.

*J. L. Fleming* for plaintiff.
*Moore & Long* for defendant.

CLARK, C. J.    The complaint alleges that the plaintiff was
editor of a newspaper, and "(2) that during February, 1902,
the defendant company, then trying to secure aid in building
a line of railroad from Raleigh to some point on Pamlico
Sound, applied to the plaintiff *to secure the columns of his
paper* and his personal service in trying to carry elections
along the route of the proposed road by which bonds were to
be issued for the use and benefit of said road, and to gain for
said road the good will of the citizens along said road and in
other ways assist the managers and directors of said road in-
their undertaking; and under the promise from the manager
and one of the directors of said defendant company that he
should be 'taken care of,' well paid for his services, he agreed
to serve the defendant as best he could in the manner sug-
gested, and did serve it in the ways indicated by defendant
through the columns of his paper, by advertisements and by
personal services at elections and in other ways well known to
defendant.    For such services the defendant agreed and
promised to pay, but when demand was made the defendant
admitted his right to compensation, but only offered him $300
in second mortgage bonds of its railroad company for his ser-
vices; (3) that the services rendered the defendant by the
plaintiff were reasonably worth the sum of $1,500; (4) that
payment has been demanded and refused."

The plaintiff makes clear his meaning by his evidence, in which he said: "I was to do everything I could, through my paper and by personal service, in the interest of the railroad. * * * I published editorials, etc., in the paper for two' years. * * * I don't know that I published articles favoring the railroad in every issue.    They were to *pay me for editorials."*    He further testified that he had a great many conversations with the president and general manager of the defendant railroad company, "in all of which he agreed to pay for my services.    I ran a paper—that was my regular work. * * * Another service I rendered was in arranging for and *helping to carry the elections for issuing bonds for the railroad in 1903.*    Contract was, 'if it won, would issue $15,000 bonds and take second mortgage,' etc.    I was largely instrumental in getting citizens interested and in calling elections and in getting people to register and vote and in carrying the elections.    Don't know that others got anything for services. * * * Munford (an advertiser) has paid me as much as $400.    I gave him more space than I did the railroad, but *if I had advocated his business like I did for the railroad* it would have been worth several thousand to his business.    I never published notices for railroad.    County and town paid me for election notices.    I wrote the editorials published in my paper myself and would copy extracts from other papers."    On redirect examination he admitted that "There is a difference in advertising a thing and advocating a measure."    The Court concurs in this last proposition.

When an advertisement is inserted the public knows that it is paid for, that it speaks for the advertiser and that the representations are made by him and not by the editor.    But an editorial is understood to express the true and unbought views of the editor.    It is because of that fact that they carry any weight with the public.    It was precisely because of such weight that the defendant thought it worth money to buy the use of plaintiff's editorial columns.    Had the plaintiff in-

formed the public that he had sold his editorial columns to
the railroad company his editorials would have had no weight
whatever in inducing the citizens to vote a bond issue on them-
selves in favor of the railroad. Both parties knew this.
Both are at fault. Public policy will not permit the courts
to enforce a contract based upon an immoral consideration,
but will leave the parties to their own devices. *Basket v.
Moss,* 115 N. C., 448; 44 Am. St., 463; 48 L. R. A., 842;
*Burbage v. Windly,* 108 N. C., 357; 12 L. R. A., 409, and
many other cases cited, 135 N. C., at pp. 733, 734. Neither
the sale of editorial columns nor services for carrying an
election are recognizable in a court of justice as ground of
action for a recovery of compensation.

Contracts, for money or personal profit, to use efforts and
influence to "carry an election," especially an election of this
character, are *contra bonos mores.* 9 Cyc., 500; *Wilson v.
Puryear,* 12 Ky., 556; 15 A. & E., 984; *Dean v. Clark,* 80
Hun., 80.

In *Trist v. Child,* 88 U. S., 449, there is citation of numer-
ous authorities which have refused to uphold contracts alleged
in the complaint because they are held to be against the policy
of the law and the theory upon which the government of this
republic is founded.

The plaintiff in this case was the editor of a paper and is
seeking to recover for sale of his editorial influence and for
other alleged services in carrying an election to issue bonds.
Certainly this was as much against public policy as an agree-
ment for a consideration not to bid on articles to be sold by
the government, or an agreement to pay for a contract to carry
the mail, or an agreement to pay for procuring signatures to
a pardon to be presented to the Governor, or an agreement not
to bid at a sale made under the judicial order, or an agreement
to pay for promoting a marriage; because in each of the sev-
eral instances mentioned, which have all been held to be in-
valid by reason of public policy, the interests affected are pri-

vate and largely bear upon individuals rather than upon a community, while in this case the interests affected are public and bear, if the burden should be placed, upon the whole community.

There are other services mentioned in the complaint, but they are all stated in the same cause of action and so mixed up with it as to poison the whole. *Trist v. Child,* 88 U. S., 441. It is probable that the whole employment was based upon the influence of the newspaper and its editorials. Certainly the defendant's demurrer *ore tenus* to the action should have been sustained below, and it must be sustained here.

Action Dismissed.