. W. F. LLOYD v. NORTH CAROLINA RAILROAD COMPANY.
(Filed 23 December, 1909.)

1. Railroads — Damages — Illegal Conduct — Master and Servant — Orders of Master.

An action will not lie when a plaintiff must base his claim, in whole or in part, on a violation by himself of the criminal or penal laws of the State, nor is this principle impaired by reason of the fact that plaintiff was acting under the orders of the defendant, his principal, for an agent cannot justify such conduct by showing he was so acting.

2. Railroads—Master and Servant—Employees' Hours of Service—Public Benefit—Interpretation of Statutes—Violation of Statute—Liability of Master—In Pari Delicto.

Chapter 456, Public Laws of 1907, prescribing the hours of service of employees of railroad companies, to-wit: not more than sixteen consecutive hours, and declaring that working beyond such hours shall constitute a misdemeanor on the part of the employees and the company requiring it, while doubtlessly passed for the well-being of railroad employees, was also intended for the benefit of the public, and hence, when it is alleged that plaintiff, a fireman on defendant's road, having been compelled and directed by defendant company to work continuously for twenty-three hours without food, was for that reason so incapacitated that the injury was caused him while attempting to board a slowly-moving train to reach a shanty-car where he was directed to go to get food, the plaintiff and the defendant company are *in pari delicto*, and plaintiff, having alleged an act in violation of said chapter 456, in order to maintain his action, cannot recover.

3. Interpretation of Statutes — Operative Effect — Presumption — Exact Time—Evidence.

Where a statute is to be in force from and after its ratification it will be held effective from the first moment of the day of its enactment, in the absence of evidence of the precise time; such evidence, however, will always be received when required for the prevention of a wrong or the assertion of a meritorious right.

4. Interstate Commerce — Acts of Congress — State Regulations — Questions Affected—State and Federal Control.

The act of Congress passed 4 March, 1907, to become operative 4 March. 1908, prohibiting train crews on trains engaged in interstate commerce to work more than sixteen consecutive hours, etc., not being in force when plaintiff, an employee on defendant railroad company's interstate train, was injured by reason of his working twenty-three consecutive hours without food, does not effect or impair the validity of chap. 456, Public Laws of 1907, then effective; for conceding the validity of the act of Congress, it does not impair or affect State legislation unless the Federal law is in operation, or is prohibitive in its terms or in some way affects the very question which the State legislation undertakes to regulate and control. *Semble:* This State legislation would be upheld notwithstanding the existence of the act of Congress, it being a matter both sovereigns may supervise at the same time, there being no necessary conflict between them.

CLARK, C. J., dissenting.

MANNING, J., did not sit on the hearing of this case.

APPEAL from *Long, J.,* March Term, 1909, of ORANGE.

Civil action, to recover damages for alleged negligent injury.

The complaint alleged, in substance, and there was evidence tending to show, that on 5 March, 1907, about 1:45 P. M. of said day, the plaintiff, in endeavoring to get aboard a moving freight train, with which he was employed, missed his hold and was run over and seriously and permanently injured, to his great and

irreparable damage; that the train in question was one carrying freight from Monroe, Va., to Spencer, N. C., for defendant road; that the injury was brought about by reason of the fact that he had been compelled or directed by defendant to remain continuously upon duty for twenty-three hours, without any sleep and without proper nourishment or opportunity to get it, and was thereby so weakened in mind and body that he could not properly exert himself for his own safety and protection, etc. The portion of the complaint stating the cause of his injury is as follows:

"5. That in passing over the road, above referred to, from station to station, the plaintiff had become weary, overworked and very weak and hungry, and after 2 o'clock A. M. on the morning of 5 March he had no opportunity whatever to secure food or sustenance of any kind; that while at Greensboro yard, about the hour of 12:30 o'clock on 5 March, the conductor of the train requested plaintiff to come with him (the conductor) to the shanty car to eat something, while *en route* to High Point, provided a substitute could discharge the duties of the plaintiff; that it appearing the substitute could relieve plaintiff, the engineer, who was plaintiff's superior officer, directed him (the plaintiff) to get off the engine while it was moving and go back to the shanty car for some food; that in obedience to said directions, while the train was in motion, plaintiff left a substitute as fireman, in order to go back to the shanty car for the purpose of obtaining something to eat; that the engineer upon the train on which he was riding, well knowing that unless the train was stopped plaintiff must board it while it was moving, carelessly and negligently did not stop the train for him to get off or on, but the plaintiff, at a time when the train was moving slowly, under the direction of the engineer, alighted from the engine and stood in a roadway between the two tracks, on defendant's right of way, at a point about one miles from High Point, until the caboose car should come by, so that he could board the car for the purpose of obtaining food, which he was compelled to have; that he stood in said roadway, on the right of way of the defendant, between said tracks, waiting for the shanty car to reach him; that the train was running slowly, and under ordinary circumstances the plaintiff would have been able to board the car without danger or injury to himself, but the defendant's lessee had carelessly, negligently, wrongfully and unlawfully constructed on the side of the roadway an embankment, about one foot high, out of rock ballast, which it had used in ballasting the track, and, by reason of the careless, negligent, wrongful and unlawful conduct of the defendant's lessee in requiring plaintiff to work so many

hours consecutively without rest, and so many hours consecutively without food or nutrition or sleep, the plaintiff was weak, fatigued and exhausted and was not in a normal condition of body or mind; that in his effort to board the moving shanty car, and in the exercise of due care, his feet came in contact with the embankment of ballast, above referred to, which defendant's lessee had carelessly and negligently placed there, and this broke his hold upon the shanty car and caused him to fall, throwing him on the track, under the car, and wounding, bruising and maiming him, as will more fully appear.

"6. That by reason of the negligence, carelessness and wrongful and the unlawful conduct of the defendant's lessee, as hereinbefore set out, the plaintiff was thrown down and under the car, his head wounded and bruised, his left ankle and knee cut, bruised and sprained, and his right leg so mangled, broken and cut as to require amputation six inches above the knee, and the plaintiff suffered great pain, both of body and mind, has incurred much expense for nursing, medicine and doctors' bills, lost time and his power to labor, and is now unfitted to do work, all to his great damage, in the sum of $20,000."

There was a motion for nonsuit properly entered, which was overruled, and, on issues submitted, the jury rendered a verdict for plaintiff. Judgment on verdict, and defendant excepted and appealed, and now moves here that the Court dismiss the action, "for that the complaint does not state a cause of action, and for that it appears from said complaint that the plaintiff, at the time of the alleged injury, was engaged in violating the criminal laws of the State of North Carolina, and that his alleged injuries grew out of such violation of the criminal laws of the State."

*V. S. Bryant, Aycock & Winston* and *H. A. Foushee* for plaintiff.

*W. B. Rodman* and *S. M. Gattis* for defendant.

HOKE, J., after stating the facts: On 4 March, 1907, the day before the occurrence, our General Assembly enacted a statute containing the following sections:

"Sec. 4. Any conductor, flagman, fireman, engineer, brakeman or other member of any train crew who shall work for any railroad company more than sixteen hours in any twenty-four hours shall be guilty of a misdemeanor, and upon conviction shall be fined or imprisoned, or both, in the discretion of the court: *Provided,* that it shall not be held a violation of this act by any conductor, brakeman, flagman, engineer, fireman or other member .

of any train crew who shall work more than sixteen hours in any twenty-four hours in order to clear the track or tracks of said railroad company from wrecks, wash-outs or obstruction caused by the act of God, so that they may bring the train or trains operated by them to a station on said road, which station shall be either the scheduled destination of said train or the station at which there is regularly a change of train crews; nor shall it be held a violation of this act by the corporation, officers or agents thereof to permit the said conductor, flagman, brakeman, fireman, engineer or other member of a train crew to work overtime under the circumstances and conditions hereinbefore stated.

"Sec. 5. This act shall be in force from and after its ratification."

And, under and by virtue of this statute, which was then in force, we are of opinion that, on the facts as now stated in the complaint, no recovery can be had.

It is very generally held—universally, so far as we are aware—that an action never lies when a plaintiff must base his claim, in whole or in part, on a violation by himself of the criminal or penal laws of the State. In Waite's Actions and Defenses, Vol. 1, p. 43, the principle is broadly stated, as follows: "No principle of law is better settled than that which declares that an action cannot be maintained upon any ground or cause which the law declares to be illegal," citing *Davidson v. Lanier,* 4 Wallace, 447; *Rolfe v. Delmar,* 7 Rob., 80; *Stewart v. Lothrop,* 12 Gray, 52; *Howard v. Harriss,* 8 Allen, 297; *Pearce v. Brooks,* L. R. 1 Exch., 213; *Smith v. White,* L R. 1 Eq. Cases, 626.

And this statement of the doctrine is supported and fortified by numerous decisions here and elsewhere. *Smathers v. Insurance Co.,* at the present term; *King v. Railroad,* 147 N. C., 263; *Edwards v. Goldsboro,* 141 N. C., 60; *McNeil v. Railroad,* 132 N. C., 510; *s. c.,* 135 N. C., 682; *Burbage v. Windley,* 108 N. C., 357; *Puckett v. Alexander,* 102 N. C., 95; *Turner v. Railroad,* 63 N. C., 522; *Warden v. Plummer,* 49 N. C., 524; *Sharp v. Farmer,* 20 N. C., 255; *Wallace v. Cannon,* 38 Ga., 199. The decision in *McNeil's case,* 132 N. C., 510, was reversed on petition to rehear in 135 N. C., 682, but the reversal seems to have been on the ground that it was not necessary to resort to the contract prohibited in that case as a basis for recovery; and, further, that the statute in the inhibitive feature was only operative on the company; but both opinions are in support of the position applied to the present case. Nor is the principle, in its application to this case, impaired or in any way affected by reason of the allegation that the plaintiff was acting under the orders of

defendant, for an agent cannot justify illegal conduct by showing that he was acting under orders of his principal.    Lawson on Rights and Remedies, Vol. 1, p. 187, note 2, in which is cited, among other decisions, *Johnston v. Barber,* 5 Ga., 425; *Perminter v. Kelly,* 18 Ala., 716.

True, as pointed out in *Smathers v. Insurance Co., supra,* there is a class of cases which hold that a plaintiff will not always be considered *in pari delicto* and barred of recovery on that account, when a statute in its prohibitive feature operates only on one of the parties, and is evidently enacted for the protection of the other.    As stated by Clark, in his work on Contracts, p. 336, "Parties are not to be regarded as being *in pari delicto* where the agreement is merely *malum prohibitum* and the law which makes it illegal was intended for the protection of the party seeking relief."    While the well-being of the railroad employees was, no doubt, one of the motives which induced this legislation, the statute was also enacted for the benefit and protection of the public; and the principle just referred to, stated as one of the exceptions to the general rule, has no application to the case presented here, when the claimant must allege his own violation of the criminal law as the basis for his claim.

It could not be contended that the mere placing of a lot of ballast along the track, to be used in the necessary repairs of the road, and at a point one mile from any yard or usual stopping place, would of itself constitute negligence; and the complaint itself states the proximate cause of the injury to be as follows: "And, by reason of the careless, negligent, wrongful and unlawful conduct of the defendant's lessee in requiring plaintiff to work so many hours consecutively without rest, and so many hours consecutively without food or nutrition or sleep, the plaintiff was weak, fatigued and exhausted and was not in a normal condition of body or mind; that in his effort to board the moving shanty car and in the exercise of due care, his feet came in contact with the embankment of ballast, above referred to, which defendant's lessee had carelessly and negligently placed there, and this broke his hold upon the shanty car and caused him to fall, throwing him on the track, under the car, and wounding, bruising and maiming him, as will more fully appear."

Again, it was contended in the argument that the statute, having been enacted the day before the occurrence, 4 March, would not become effective till the last moment of that day; and, this being true, the plaintiff had not worked for the prohibited period of sixteen hours from and after the time when the statute went into effect; but the authorities do not sustain such a position.

The better doctrine seems to be that, while a court will hear evidence and determine the precise moment of time when a statute was enacted, whenever this becomes necessary to prevent a wrong or to assert a meritorious right, in the absence of any such evidence or means of proof the statute will be held effective from the first moment of the day of its enactment. Mr. Bishop, in his work on Statutory Crimes, states this to be the rule. Bishop Stat. Crimes, p. 21, sec. 28. And an examination will show this to be a correct deduction from the decisions. *Louisville v. Bank,* 104 U. S., 469; *Burgess v. Salmon,* 97 U. S., 381; *Lapeyne v. United States,* 84 U. S., 191; *Kennedy v. Palmer,* 72 U. S., 316; *Arrow v. Hamering,* 39 Ohio St., 573.

The last case gives a very clear statement of the question presented, as follows:

"1. This act took effect on the day of its passage, and, by presumption of law, from the commencement of that day, and not from its expiration.

"2. This presumption will not prevail where it is in conflict with any right acquired in actual points of time, on that day, before the act took effect. In such case the exact time of the day may be shown."

And it was contended for defendant that in any event the service after the sixteen hours was the thing prohibited, and that this undoubtedly was after the statute was in operation. It was further suggested that Congress had enacted a statute prohibiting railroads from requiring or permitting train crews on trains engaged in interstate commerce to work more than sixteen consecutive hours, etc. The statute having been enacted 4 March, 1907, to become operative 4 March, 1908, and that the enactment of such a law would render the State legislation in question of none effect; but that view does not obtain with us. If it be conceded that the act of Congress, in its present form, is a valid law, we have held that such legislation does not impair or affect State legislation unless the Federal law is in operation, and is prohibitive in its terms or in some way affects the very question which the State legislation undertakes to regulate and control. *Reid v. Railroad,* 150 N. C., 753. And, further, under the doctrine announced and upheld in *Smith v. Alabama,* 124 U. S., 465, it would seem that the State legislation on this subject would be upheld, notwithstanding the existence of the Federal statute referred to, this being a matter which both sovereignties may supervise at one and the same time, at least when there is no necessary conflict between them. In that case the State of Alabama had enacted a law to the effect "That it should be

unlawful for the engineer of any railroad train in this State to drive or operate or engineer any train of cars or engine upon the main line or roadbed of any railroad in this State which is used for the transportation of persons, passengers or freight, without first undergoing an examination and obtaining a license, as hereinafter provided." And, as applied to an engineer ·engaged at the time in interstate commerce, the court held: "(1) That the statute of Alabama was not in its nature a regulation of commerce, even when applied to such a case as this; (2) that it was an act of legislation within the scope of the powers reserved to the States to regulate the relative rights and duties of persons within their respective territorial jurisdictions, being intended to operate so as to secure safety of persons and property for the public; (3) that so far as it affected transactions of commerce among the States, it did so only indirectly, incidentally and remotely, and not so as to burden or impede them, and that in the particulars in which it touched those transactions at all it was not in conflict with any express enactment of Congress on the subject, nor contrary to any intention of Congress to be presumed from its silence; (4) that so far as it was alleged to contravene the Constitution of the United States, the statute was a valid law."

The motion made by defendant is permissible, under the rule (140 N. C., 662; *Sutton v. Walters,* 118 N. C., 495-500), and we are of opinion, as stated, that no valid cause of action is stated in the complaint, and the same must be dismissed.

Reversed.

CLARK, C. J., dissenting.

MANNING, J., did not sit on the hearing of this case.