CARMA STRIDER v. GEORGE R. LEWEY.

(Filed 20 November, 1918.)

**1. Seduction—Actions—Parties—Infants—Female.**

An action for damages for seduction may be maintained by a female under 21 years of age, in her own name and right, against her grandfather, upon the ground that he took advantage of his influence over her innocence and virtue to accomplish his unlawful purpose.

**2. Incest — Seduction — Criminal Law—Accomplice—Influence—Evidence— Questions for Jury.**

While, generally, an action will not lie when the plaintiff must necessarily base the cause of action on her own violation of the criminal law, and a single act of sexual intercourse, within the prohibited degree of consanguinity, constitutes the offense of incest, the consent of the female is not always essential to the guilt of the male; and where the defendant is the grandfather of the plaintiff in a civil action, and there is evidence tending to show that he had raised her from her infancy; had slept in the same bed with her, and, at the age of 16, by the exercise of his influence, had induced her to believe the act was not wrong, and thus designedly accomplished his purpose when she was innocent and virtuous: *Held,* it is for the jury to determine whether the plaintiff was a voluntary accomplice in the commission of the crime, or whether she yielded under the undue and dominating influence of the defendant.

ACTION, tried before *Shaw, J.,* at February Term, 1918, of ROCKINGHAM.

STRIDER *v.* LEWEY.

At conclusion of the evidence of plaintiff a motion to nonsuit was sustained. Plaintiff appealed.

*Percy T. Stiers, J. R. Joyce, and Brooks, Sapp & Kelly for plaintiff. E. R. Scott, C. O. McMichael, P. W. Glidewell, and Manly, Hendren & Womble for defendant.*

BROWN, J. The plaintiff sues to recover damages for seduction, alleging that the defendant, her grandfather, took advantage of her youth and inexperience, and with wicked and diabolical design upon her innocence and virtue induced her to submit to his wishes and have sexual intercourse with him. The defendant denies the seduction and sexual intercourse.

Upon the conclusion of plaintiff's evidence, defendant moved to nonsuit, contending: (1) That the plaintiff being a minor cannot maintain the action for seduction, as the cause of action is in her father. (2) In order to establish her claim, she must rely upon a criminal transaction, to which she is a party, viz., carnal intercourse with a grandparent, which makes *her* guilty of incest, a felony.

The right to maintain this action by this plaintiff is upheld in *Hood v. Sudderth,* 111 N. C., 220, cited and approved in many subsequent cases and at this term in *Tillotson v. Currin.* In this last-named case it is also held that the father may recover for the loss of services of his daughter while a minor.

As to the second position of defendant, we recognize the general principle that an action never lies when the plaintiff must necessarily base the cause of action on a violation by himself of the criminal law. *Lloyd v. R. R.,* 151 N. C., 566; *Hinton v. R. R.,* 172 N. C., 587. Therefore, it follows that if plaintiff, upon her own evidence, is necessarily guilty of incest, the nonsuit was properly allowed. We are of opinion, however, that the cause should have been submitted to the jurors upon proper issues and instructions, to the end that they should determine the question as to whether the plaintiff was guilty of incest or not.

It is true that a single act of sexual intercourse between persons related within prohibited degrees of consanguinity constitutes incest, but the consent of the female is not essential to the guilt of the male. The crime of incest may be committed by the male without the consenting mind of the female. *Taggert v. State,* 111 Am. St. Rep., 24, and cases cited. The mere fact that this plaintiff submitted to her grandfather, under the evidence, does not make her necessarily an accomplice in the crime.

In *Porah v. State,* 48 A. St. Rep., 959, the Supreme Court of Wisconsin says: "It does not necessarily follow in such cases that the

29—176

female is to be regarded as an accomplice, and particularly in a case like the present, in view of the relation between the parties and the coercive authority of her father over her. *Raiford v. State,* 68 Ga., 672; *Norton v. State,* 106 Ind., 163. If, in the commission of the incestuous act, the female was the victim of force, fraud, or undue influence, so that she did not act voluntarily and join in the commission of the act with the same intent that the accused did, then she ought not to be regarded as an accomplice. In all such cases, where it is to be proved inferentially, the question of accompliceship is one of fact for the jury. Wharton's Criminal Evidence, sec. 440; *Mercer v. State,* 17 Tex. App., 452."

In *Shelly v. State,* 95 Tenn., 152, the Court holds that a woman who consents to incestuous intercourse voluntarily and with the same intent that actuated the man is guilty as his accomplice, but it is otherwise if she was the victim of force, fraud or of undue influence. To same effect is *Freeman v. State,* 11 Tex., 92; 40 Am. Rep., 787, and cases cited.

The weight of precedents is to the effect that in the crime of incest there may be a certain strong influence exerted, resulting from the relationship and circumstances of the parties and the age of the female which overcomes her objections without amounting to that degree of violence which would constitute rape. *Raiford v. State,* 68 Ga., 672; *Taggert v. State,* 111 Am. St. Rep., 24. We think there is evidence of such dominating and undue influence exerted by defendant over plaintiff, causing her to submit to his wishes.

The plaintiff is the granddaughter of defendant and had resided with him since she was five years of age. Her grandmother, defendant's wife, died in March, 1916, leaving only plaintiff and her grandfather in the house. The plaintiff did the housework and cooking. She had been in habit of sleeping with defendant, her grandfather, ever since her early childhood. On the night of 5 May, 1916, when plaintiff was sixteen years of age, she slept as usual with defendant. She testifies that about midnight he arose, saying he was in great pain. "I asked him what he wanted, and he said he wanted me to give him ease, that his privates hurt, but did not want me to do anything wrong; that the Bible said that what he wanted was not wrong; that I could ask my grandmother or any one else I wanted to. I did not know whether it was wrong or not; nobody had ever talked to me. I took his word for it and believed him. He kept telling me that there was no harm; that the Bible said not to commit adultery, but this was not adultery. After this talk he just went on himself and had sexual intercourse with me. The next morning he told me to say nothing about it; that he would kill me; and this was the first time that I suspected that it was wrong. On the 7th of May I told my mother about it. She told me not to sleep

with him, that it was wrong, and to make him send me off. No other man had ever had intercourse with me or said anything like that to me. I am the mother of a child, which was born 6 February, 1917, and the defendant is its father."

The plaintiff introduced witnesses who testified to her general good character.

The evidence should have been submitted to the jury for their consideration, and it should have been left to them to determine whether the plaintiff was a voluntary accomplice in the commission of the crime, or whether she yielded because of the undue and dominating influence of the defendant. Their relations were such as to give him a very powerful influence over her. He had raised her and slept with her since her early childhood. She was ignorant, and if her testimony is to be believed, entirely ignorant of what sexual intercourse meant. Defendant assured her it was harmless and according to the Bible and exerted all his parental influence to compel her to yield to his purpose. Two days afterwards, when she learned the effect of what she had done and its immorality, she told her mother about it. If plaintiff's evidence is to be believed, a jury could reasonably draw the inference that she was the victim of defendant's fraudulent and undue influence, and not his voluntary accomplice. It is for the jurors to draw the inference, and not the judge.

New trial.