The plaintiffs filed the following complaint:
The plaintiffs, complaining of the defendants, allege:
1. That the plaintiffs are partners trading and doing business under the firm name and style of Brown-Bledsoe Lumber Company, and at all *Page 129 
times hereinafter mentioned have been, and are now engaged in the City of Greensboro, County and State aforesaid, in the business of buying and selling lumber for direct-mill shipment, and at the times hereinafter mentioned were wholesale direct-mill distributors of lumber.
2. That the defendant T. C. Coxe is a citizen and resident of Anson County, North Carolina, and at all times hereinafter mentioned was engaged in the business of manufacturing and selling lumber, with his principal office at Wadesboro, North Carolina, and operating a mill for that purpose at Lilesville, North Carolina, under the trade name and style of Coxe Lumber Company, a mill for that purpose at Mont Clare, South Carolina, under the trade name and style of Coxe Lumber Company, and a mill for that purpose at Camden, South Carolina, under the trade name and style of Wateree Lumber Company.
3. That the defendant Coxe Lumber Company, Inc., is a corporation duly created, organized and existing under the laws of the State of North Carolina, with its principal office and place of business at Wadesboro, Anson County, North Carolina.
4. That the plaintiffs are informed and believe and, upon such information and belief, allege that the defendant Coxe Lumber Company, Inc., during the year 1946, took over the lumber business theretofore conducted by the defendant T. C. Coxe, including the assets thereof, and also became liable for the debts and obligations of said T. C. Coxe in and about said lumber business.
5. That from 3 November, 1943, to 14 June, 1944, the plaintiffs received orders from various customers for Southern Pine Lumber which they placed with the defendant T. C. Coxe, trading as Coxe Lumber Company, to be filled by him, and that the defendant T. C. Coxe shipped the lumber to consignees designated by the plaintiffs, billing the same to plaintiffs and receiving payment therefor from plaintiffs in accordance with invoices furnished by said Coxe to the plaintiffs, and that thereupon the plaintiffs invoiced the shipments to its customers in accordance with the invoices received from said Coxe, as to quantities and grades of lumber contained in said shipments, at proper maximum prices for said quantities and grades.
6. That at all times herein mentioned prior to 4 February, 1944, there was in effect Revised Maximum Price Regulation No. 19 (8 F. R. 5536), issued by the Price Administrator of the Office of the Price Administration pursuant to 50 U.S.C.A. App., 901, et seq., establishing maximum prices for the purchases, sales and deliveries of Southern Pine Lumber for direct-mill shipment.
7. That at all times herein mentioned since 4 February, 1944, there was in effect Second Revised Maximum Price Regulation No. 19 (9 F. R. 1162), issued by the Price Administrator of the Office of Price Administration pursuant to 50 U.S.C.A. App. 901, et seq., establishing *Page 130 
maximum prices for the purchases, sales and deliveries of Southern Pine Lumber for direct-mill shipment.
8. That under said regulations all shipments of Southern Pine lumber made by said Coxe during the period above alleged were required to be graded by a competent inspector and the applicable maximum prices charged by him for the quantities and grades contained in said shipments, and that under said regulations a shipment of lumber containing more than one grade of lumber, or a combination of grades, could not be sold at prices higher than the maximum price for the lowest grade of lumber contained in said shipment unless lumber of each grade was actually graded and tallied on a board foot basis and invoiced separately at prices not in excess of ceiling prices for the respective grades.
9. That the aforesaid shipments of lumber by the defendant T. C. Coxe to the customers of the plaintiffs were invoiced to the plaintiffs by said Coxe, with quantities and grades shown on the invoices and with proper maximum prices for the quantities and grades shown thereon, and were invoiced by plaintiffs to their customers in the same manner with proper maximum prices for the quantities and grades shown on the invoices, with a 6% commission added as provided by said regulations.
10. That the plaintiffs never saw or inspected any of the lumber shipped by Coxe to their customers aforesaid, and relied upon invoices and inspection certificates received by them from said Coxe in selling and invoicing said lumber to their customers.
11. That the shipments of Southern Pine Lumber made by the defendant T. C. Coxe to the customers of the plaintiffs during the period above alleged which contained more than one grade of lumber, or were combination grade shipments, were either not actually graded by said Coxe, or if graded they were invoiced by him without regard to the different grades of lumber in said shipments on an arbitrary percentage basis in violation of said regulations.
12. That on 2 November, 1944, an action was instituted in the District Court of the United States for the Middle District of North Carolina, Greensboro Division, entitled "Chester Bowles, Administrator, Office of Price Administration, Plaintiff, vs. T. B. Bledsoe, Greensboro, North Carolina; Mrs. Maud G. Bledsoe, Greensboro, North Carolina; Margaret G. Bledsoe, Washington, D.C.; Jeanette B. Bledsoe, Greensboro, North Carolina; Individually and Doing Business as Brown-Bledsoe Lumber Company, Greensboro, North Carolina, Defendants," and that in said action on 24 January, 1946, judgment was rendered against these plaintiffs for the sum of $19,289.55, and costs, solely by reason of the unlawful and wrongful failure of the defendant T. C. Coxe to grade or properly grade the combination grade shipments of lumber above alleged. That cross-appeals were taken from said judgment and on 8 January, 1947, the United States Circuit Court of Appeals for the Fourth Circuit *Page 131 
affirmed the judgment of the District Court assessing damages of $19,289.55 and costs against these plaintiffs as aforesaid, and remanded the case to the District Court to enter judgment against the plaintiffs for the amount of overcharges in respect to ten cars of combination grade Southern Pine Lumber shipped by the said T. C. Coxe to D. Ginsberg Sons, Corona, New York, in January and February, 1944, on orders of these plaintiffs, in the manner above alleged, in respect to which shipments the said T. C. Coxe furnished to these plaintiffs invoices and certificates of inspection, and which said shipments were either not actually graded by said Coxe or if graded they were invoiced by him and certificates of inspection furnished by him without regard to the different grades of lumber in said shipments on an arbitrary or fictitious percentage basis in violation of said regulations, and that in said action, pursuant to the mandate of the United States Circuit Court of Appeals for the Fourth Circuit, judgment was entered against these plaintiffs in the said United States District Court on 19 February, 1947, for the sum of $3,605.53, for overcharges in respect to said ten cars of lumber, solely by reason of the aforesaid wrongful and unlawful violation of said regulations by the defendant T. C. Coxe.
13. That the defendant T. C. Coxe had full notice and knowledge of said action and testified as a witness during the trial thereof.
14. That on 14 January, 1947, these plaintiffs paid the first judgment aforesaid and interest therein in the sum of $20,446.92, and that on 21 February, 1947, they paid the second judgment aforesaid and the costs of said action in the sum of $3,738.23.
15. That plaintiffs have also paid attorney's fees and other reasonable and necessary expenses in making their defense in said action in the sum of $4,252.43, all of said payments having been made on or before 21 February, 1947.
16. That by reason of the matters and things above alleged the defendants are indebted to the plaintiffs in the sum of $28,437.58, with interest on $20,446.92 at the rate of 6% per annum from 14 January, 1947, and with interest on $7,990.66 at the rate of 6% per annum from 21 February, 1947.
Wherefore, plaintiffs pray that they recover of and from the defendants, jointly and severally, the sum of $28,437.58, with interest on $20,446.92 at the rate of 6% per annum from 14 January, 1947, and with interest on $7,990.66 at the rate of 6% per annum from 21 February, 1947, together with the costs of this action.
The defendants interposed a written demurrer to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. G.S., 1-127. The court below overruled the demurrer, and the defendants appealed, assigning such ruling as error. *Page 132 
This appeal calls to mind the ancient admonition that hard cases form the quicksands of the law.
Congress adopted the Emergency Price Control Act of 1942 as a temporary wartime measure "to stabilize prices and to prevent speculative, unwarranted and abnormal increases in prices and rents" because the stabilization of the national economy was "in the interest of the national defense and security and necessary to the effective prosecution of the . . . war." Emergency Price Control Act of 1942, sec. 1 (a); 50 U.S.C.A., Appendix, 901 (a); Yakus v. United States, 321 U.S. 414, 64 S.Ct., 660,88 L.Ed., 834. The Act established the Office of Price Administration under the direction of a Price Administrator appointed by the President, and set up a comprehensive plan for the promulgation by the Administrator of regulations or orders fixing the maximum prices of commodities and rents in conformity with the standards prescribed in the Act. 50 U.S.C.A., Appendix, 901-946.
As an aid to the enforcement of the Emergency Price Control Act, Congress provided certain civil and criminal sanctions. It limited criminal prosecutions to willful violations. 50 U.S.C.A., Appendix, 925 (b);Bowles v. American Stores, 139 F.2d 377. But it incorporated in the Act a section imposing civil liability upon persons selling commodities in violation of regulations, orders, or price schedules prescribing maximum prices. As subsequently amended on 30 June, 1944, this section was as follows: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may *Page 133 
be; and the word `overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action in behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same violation or violations. Any action under this subsection by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction. A judgment in an action for damages under this subsection shall be a bar to the recovery under this subsection of any damages in any other action against the same seller on account of sales made to the same purchaser prior to the institution of the action in which such judgment was rendered." Emergency Price Control Act of 1942, sec. 205 (e); 50 U.S.C.A., Appendix, 925 (e).
Pursuant to the authority conferred upon him by the Act, the Price Administrator issued Revised and Second Revised Maximum Price Regulation No. 19 establishing maximum prices for "purchases, sales, and deliveries of Southern pine lumber for direct mill-shipment." 8 Federal Register, 5536; 9 Federal Register, 1162.
The plaintiffs bought the lumber mentioned in the complaint in the course of their trade or business as wholesale lumber dealers. When they purchased this timber from the defendant, T. C. Coxe, for prices in excess of the ceiling prices fixed by Revised and Second Revised Maximum Price Regulation No. 19, the plaintiffs violated the provisions of section 4 (a) of the Act making it "unlawful for any person . . . in the course of trade or business to buy or receive any commodity . . . in violation of any regulation or order . . . or of any price schedule" prescribing maximum prices. 50 U.S.C.A., Appendix, 904 (a). As the plaintiffs bought the lumber at prices exceeding the applicable maximum prices in the course of trade or business for resale to others, the Emergency Price Control Act deemed them to be in pari delicto with the seller, T. C. Coxe, denied them any right to sue the seller, T. C. Coxe, for damages for the overcharge, and vested in the Price Administrator alone the right to bring an action against the seller, T. C. Coxe, to recover the statutory damages for the benefit of the nation as a whole. Emergency Price Control Act of 1942, secs. 4 (a), 205 (e); 50 U.S.C.A., Appendix, 904 (a), 925 (e); Bowles v.Glick Bros. Lumber Co., 146 F. (2), 566; Armour Co. v. Blindman,73 F. Supp. 609.
When they resold the lumber to their customers at prices in excess of the maximum prices fixed by Revised and Second Revised Maximum *Page 134 
Price Regulation No. 19, the plaintiffs violated the provisions of section 4 (a) of the Act making it "unlawful . . . for any person to sell or deliver any commodity . . . in violation of any regulation or order . . . or of any price schedule" prescribing maximum prices, and thereby rendered themselves liable to the statutory damages mentioned in section 205 (e) of the Act. 50 U.S.C.A., Appendix, 904 (a), 925 (e).
The Price Administrator sued the plaintiffs for the statutory damages, and secured a judgment against them for the total amount of their overcharge to their customers. Having satisfied this judgment, the plaintiffs seek in this action to recover of the defendants the amount of such overcharge, and the expenses incurred by the plaintiffs in defending the Price Administrator's suit. They concede that they have no right to maintain an action for these items under the Emergency Price Control Act, but say that their complaint states a good cause of action under the common law rule that "one compelled to pay damages on account of the negligent or tortious act of another has a right of action against the latter for indemnity." 42 C. J. S., Indemnity, sec. 21.
At first blush, the complaint seems to make a just appeal to the judicial conscience. Like Adam, the plaintiffs have offended through the fault of another. It may even be plausibly asserted that the law must afford the plaintiffs the relief they ask if it is to approach close enough to justice to touch the hem of her garment. But we think that this argument gazes at the comparatively unimportant affairs of the parties litigant, and blinks at the vastly important principle of public policy involved in the Emergency Price Control Act.
When all is said, the plaintiffs are attempting to transfer from themselves to the defendants a punishment visited upon the plaintiffs on account of their own violation of a general statute enacted by the lawmakers of the nation to aid the country in effectively prosecuting the Second World War against her armed enemies. The plaintiffs were not assessed treble damages in the Administrator's suit. They were held liable for their overcharge alone. Congress clearly intended that the plaintiffs should not escape the payment of this overcharge in spite of the fact that they relied on invoices and certificates of inspection furnished by the defendant, T. C. Coxe, and that they acted in good faith and without any intention to violate any existing maximum price schedule when they resold the lumber to their customers at prices in excess of the ceiling prices established by Revised and Second Revised Maximum Price Regulation No. 19. This is true because section 205 (e) of the Emergency Price Control Act imposed upon sellers absolute liability for the amounts of their overcharges regardless of their good faith. Under the Act, good faith on the part of a person selling a commodity at a price above the established ceiling was immaterial, except as a partial defense under the provision reducing the statutory damages from three times the amount *Page 135 
of the overcharge to the amount of the overcharge if he proved "that the violation of the regulation, order, or price schedule in question was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation." 50 U.S.C.A., Appendix, 925 (e); Star Steel Supply Co. v. Bowles, 159 F.2d 812; Crary v. Porter,157 F.2d 410; Bowles v. Indianapolis Glove Co., 150 F.2d 597;Bowles v. Hasting, 146 F.2d 94; Bowles v. Franeschini,145 F.2d 510; Brown v. Cummins Distilleries Corporation, 53 F. Supp. 659.
Congress decreed that well intentioned sellers of commodities should act at their peril in so far as liability for their overcharges was concerned because it realized that such course was essential to the accomplishment of the purposes of the Emergency Price Control Act. It knew that "innocent non-conformity with the Price Control Act was as inflationary and as damaging to competitors and the public as guilty nonconformity." Brown v.Hecht Co., 137 F.2d 689. It considered that occasional hardship to one who honestly and intelligently endeavored to comply with the Act was not too high a price to pay for the protection of the whole nation against inflation. Bowles v. American Stores, supra (139 F.2d 379).
If the Court should permit the plaintiffs to recover of the defendants upon the complaint here questioned, it would, in final result, exempt the plaintiffs from the consequences of their own nonconformity with the Emergency Price Control Act, and impose upon the defendants responsibility for both their own offending and that of the plaintiffs. Thus the plaintiffs would go unwhipped of justice, and the defendants would suffer double penalties, notwithstanding the plainly expressed intent of Congress to the contrary. Moreover, the court could not uphold the right of the plaintiffs to maintain the action set forth in their complaint without setting at naught the salutary rule that the law will not lend its aid to those who found their claim for relief upon their own unlawful acts. Brownv. Brown, 213 N.C. 347, 196 S.E. 333; Wheeler v. Bank, 209 N.C. 258,183 S.E. 269; Bean v. Detective Co., 206 N.C. 125, 173 S.E. 5;Strider v. Lewey, 176 N.C. 448, 97 S.E. 398; Lloyd v. R. R., 151 N.C. 536,66 S.E. 604, 45 L.R.A. (N.S.), 378.
We conclude, therefore, that the complaint fails to state facts sufficient to constitute a good cause of action, and that the court below ought to have sustained the demurrer.
We prefer to rest our decision upon the Emergency Price Control Act itself, and the well settled principle of law mentioned above. But the same result might well be reached by applying to the facts alleged the interpretation put upon the relevant regulation of the Price Administrator by the Circuit Court of Appeals for the Fourth Circuit when it decided the appeals in the action of the Administrator against the plaintiffs. Porterv. Bledsoe, 159 F.2d 495. *Page 136 
For the reasons given, the judgment of the court below overruling the demurrer is
Reversed.