CHARLES M. PFEIFER & CO. v. LOVE'S DRUG COMPANY.

(Filed 22 March, 1916.)

**1. Intoxicating Liquors—Vendor and Purchaser—Action for Purchase Price—Public Policy.**

A nonresident seller of intoxicating liquor who made the sale knowing that the liquor was to be received here and sold in violation of our prohibition law cannot recover the purchase price in the courts of this State.

**2. Intoxicating Liquors—Revenue License—Effect.**

A license from the United States Internal Revenue Department is no protection to one violating our prohibition law. It is only a receipt showing that defendant has paid the taxes to the Federal Government.

**3. Intoxicating Liquors—Sheriff's License—Interpretation of Statutes.**

A license from the sheriff to sell intoxicating liquors does not authorize the delivery thereof for the purpose of sale when it does not comply with the requirements of Revisal, secs. 2063, 2064, and 2066, and such license is therefore void.

**4. Judgments—Subsequent Terms—Verdict—Effect—Statutes.**

Where a verdict is rendered and entered on the last day of the term, it is proper for the trial judge at the next term to render judgment thereon; but while as between the parties the judgment is entered *nunc pro tunc* as of the former term, as to judgments of third parties it can be a lien only from the docketing, effective, by provision of the statute, from the first day of the term thereof.

APPEAL by plaintiffs from *Peebles, J.,* at October Term, 1915, of WAKE.

*W. C. Harris and W. B. Snow for plaintiffs.*
*Manning & Kitchin for defendants.*

CLARK, C. J. This is an action by the plaintiffs, wholesale liquor dealers in Cincinnati, Ohio, to recover of defendants in Raleigh, N. C., the price of a large quantity of whiskey sold and shipped to them during 1913 and 1914. The defendants' defense is that the whiskey was sold and delivered with the knowledge that it would be resold in North Carolina in violation of the criminal law of the State.

The issues submitted were in the same language as those submitted in *Bluthenthal v. Kennedy,* 165 N. C., 372. The jury responded "Yes" to the third issue, "Did the plaintiffs sell and deliver the whiskey to the defendants knowing that the same was to be resold in North Carolina contrary to the laws of the State?" The decision in the above cited case was followed by the judge below, and is conclusive of this appeal. That case has been approved in *Fashion Co. v. Grant,* 165 N. C., 457, and *Smith v. Express Co.,* 166 N. C., 158, and cases there cited, among them a similar action to this by the same plaintiff, *Pfeifer v. Israel,* 161 N. C., 409. The statement of the law in *Smith v. Express Co.* at p. 158 is directly applicable and is controlling.

The whole matter has been so fully and so recently discussed in the cases above cited that it is unnecessary to repeat what is said therein.

It is true that the defendants have a license to sell intoxicating liquor, issued by the United States Internal Revenue Department, but that is no protection against the State law prohibiting the sale of whiskey, and amounts to no more than a receipt given the defendants that they have paid the taxes required by the Federal Government. It is also true that the defendants hold a license from the sheriff to sell intoxicating liquors, but as fully set out in *Smith v. Express Co., supra,* the license does not authorize "the delivery of intoxicating liquors for the purposes of sale when it does not comply with the requirement of Revisal, 2063, 2064, and 2066. And such license is therefore void." That case was decided even prior to our decision in *Glenn v. Express Co.,* 170 N. C., 286, which has sustained the constitutionality of the Webb-Kenyon law.

The judge properly told the jury that if they responded "Yes" to the third issue, above set out, to answer the issue as to indebtedness "No."

This was the last case tried at that term of court, and the verdict was rendered on Saturday and recorded. At the next term, which began on the following Monday, the judgment on the verdict was signed and entered *nunc pro tunc*. This was entirely regular. *Ferrell v. Hales,* 119 N. C., 199, which has been cited and approved: *Taylor v. Ervin,* 119 N. C., 274; *Knowles v. Savage,* 140 N. C., 372. As was said in *Ferrell v. Hales, supra,* "The judge could not set aside the verdict rendered at the previous term, and if he could not enter judgment upon the facts found by the jury by their recorded verdict, the matter would have been forever suspended, like Mohammed's coffin.

> In Aladdin's tower
> Some unfinished window unfinished must remain.

"Not so in legal proceedings, which deal with matters of fact, not fancy. The judge, at the next term, seeing the record complete up to and including the verdict, properly rendered judgment *nunc pro tunc*. This was practical common sense, and is justified by precedent. *Bright v. Sugg,* 15 N. C., 492; *Long v. Long,* 85 N. C., 415; *Smith v. State,* 1 Tex. App., 408. As to difficulties suggested, it may be observed that while the judgment as between the parties is entered as of the former term, *nunc pro tunc,* as to third parties it can only be a lien from the docketing, which by The Code, sec. 433, has effect from the first day of the term at which it was actually entered." There is no controversy here as to the priority of judgments.

No error.