D. C. PATTERSON v. SOUTHERN RAILWAY COMPANY; WINSTON-SALEM SOUTHBOUND RAILWAY COMPANY; ATLANTIC AND YADKIN RAILWAY COMPANY; ATLANTIC COAST LINE RAILROAD COMPANY; ABERDEEN AND ROCKFISH RAILROAD COMPANY: HIGH POINT, RANDLEMAN, ASHEBORO AND SOUTHERN RAILROAD COMPANY; YADKIN RAILROAD COMPANY; AND PIEDMONT AND NORTHERN RAILWAY COMPANY.

(Filed 22 June, 1938.)

**1. Pleadings §§ 3a, 6—**

A party is entitled of right to put in his pleading a concise statement of his cause of action or defense, and nothing more. C. S., 506, 519.

**2. Pleadings § 29—**

A party is entitled, as a matter of right, to have irrelevant or redundant matter which is prejudicial to him, or scandalous, stricken from his opponent's pleading upon motion aptly made.

**3. Same—Test of relevancy is whether the matter alleged is competent to be shown upon the hearing.**

Plaintiff is entitled to have allegations of the defense stricken out only when they contain no averment competent or necessary to the defense, while defendant is entitled to have them stand, even if prejudicial or scandalous, if they contain a valid defense, the test being whether the matter alleged is competent to be shown on the hearing.

**4. Monopolies § 3a—Allegations that agreement resulted in lower prices to public held no defense to action for damages for alleged unlawful conspiracy.**

Plaintiff, a carrier by truck, instituted this action against certain railroad companies, to recover damages to his business, which he alleged resulted from an unlawful conspiracy between defendants to reduce transportation rates in order to eliminate plaintiff as a competitor, with the purpose of raising rates after competition had been removed. Defendants alleged that the reduction in rates resulted in lower prices to the consuming public on the products on which the rates had been reduced. *Held:* The matter alleged does not constitute a defense to the action, since

PATTERSON v. R. R.

the express policy of the State is against both the raising and lowering of prices by unlawful means for an unlawful purpose, C. S., ch. 53, and since the law is interested in preserving competition rather than obtaining for the public temporary benefits from price wars in which competition is extinguished.

5. **Carriers § 5: Actions § 4—Failure of carrier by truck to obtain proper licenses for trucks does not render the business illegal.**

Plaintiff, a carrier by truck, instituted this action under C. S., 2574, against certain railroad companies to recover damages to his business, alleged to have resulted from the unlawful conspiracy of defendants. Defendants alleged in their answers that plaintiff was a carrier by truck for hire, and had obtained from the Commissioner of Revenue only licenses as a private hauler, and had made false and fraudulent misrepresentations as to the weight of his trucks and trailers, and thereby obtained licenses at a lower cost, thereby defrauding the State. *Held:* The statutes requiring licenses for operating trucks and trailers on the highways of this State are for revenue purposes and not for police regulation, and therefore the operation of motor vehicles without appropriate licenses subjects the operator to the penalty prescribed by statute, C. S., 2621 (13), but does not render the business itself illegal, and the allegations of the answer, if established, would not prevent plaintiff from maintaining the action to recover damages to his business.

6. **Monopolies § 3a: Pleadings § 29—Allegations held properly stricken from the answer, the matter alleged not constituting a defense.**

Plaintiff, carrier by truck, instituted this action under C. S., 2574, against certain railroad companies to recover damages to his business alleged to have resulted from the unlawful conspiracy of defendants, C. S., 2563 (3). *Held:* The allegations in defendants' answers to the effect that the reduction of transportation rates complained of resulted in benefit to the public in reduced retail prices on the products, and that plaintiff was operating his trucks on the highways of the State without obtaining appropriate licenses therefor, were properly stricken out on motion of plaintiff aptly made, C. S., 537, the matter alleged not constituting a defense to plaintiff's cause of action.

DEVIN, J., dissenting.

BARNHILL, J., concurs in dissent.

APPEAL by defendants from *Bone, J.,* at April Civil Term, 1938, of ALAMANCE. Affirmed.

The plaintiff sued for recovery of damages caused by alleged injury to his business of hauling gasoline and kerosene, by means of a conspiracy entered into by the defendants to reduce transportation rates in order to eliminate plaintiff as a competitor, with the purpose of raising such rates after competition had been removed. The defendants answered the complaint, denying the material allegations thereof and setting up numerous defenses, amongst which are the following:

1. Paragraph 7 of the first further defense of defendants (except Piedmont & Northern Railroad Company): "The effect of the railroad

rate reductions of August, 1935, and of May, 1936, has been beneficial to the public of this State. This defendant alleges on information and belief that immediately after the railroad rate reductions of August, 1935, the price of gasoline to consumers in the areas to which such rates were applicable was decreased by approximately one-half cent per gallon, and that immediately after the railroad rate reductions of May, 1936, there was a further decrease in the price to consumers of approximately one-half cent per gallon. Said reductions to the consuming public were the direct and immediate results of the competitive rates so established by the railroads by the said reductions."

2. Paragraph 8 of the said first further defense of all of said defendants (except Piedmont & Northern Railroad Company) : "As the result of the railroad rate reductions of August, 1935, and of May, 1936, competition between trucks and railroads at Wilmington has been preserved and the price of gasoline to consumers has been reduced. Should plaintiff prevail in this action, it will result in an increase in rail rates and the elimination of all rail competition for the transportation of petroleum products out of Wilmington and an immediate increase in the price of gasoline to North Carolina consumers. This defendant alleges and says that such result is contrary to the public policy of this State and will be injurious to the citizens of this State, that the objective of plaintiff's suit is contrary to law and contrary to public policy, and that plaintiff should not prevail. The facts set forth herein are pleaded by this defendant as a defense to plaintiff's right to recover in this action."

3. Paragraph 6 of the second further defense of all of said defendants (except Piedmont & Northern Railroad Company) : "This defendant alleges on information and belief that immediately after the rate reduction of 17 August, 1935, and because of such railroad rate reduction, the price of gasoline distributed by plaintiff in the vicinity of Burlington was reduced approximately one-half cent per gallon; that immediately after the said railroad rate reduction of 5 May, 1936, and because of such reduction, the price of gasoline distributed by plaintiff in the vicinity of Burlington was reduced approximately one-half cent per gallon."

4. Portions of the fifth further defense of all of said defendants (except the Piedmont & Northern Railroad Company), and portions of the second further defense of Piedmont & Northern Railroad Company, being the whole of paragraphs 3 to 12, inclusive, of all of said answers : "For the year 1935 application was made by plaintiff to the Commissioner of Revenue of the State of North Carolina for the issuance of a private hauler license of each tractor or truck and trailer used by plaintiff in such transportation."

"For the year 1936 application was made by plaintiff to the Commissioner of Revenue of the State of North Carolina for the issuance of a

private hauler license for each tractor or truck and trailer used by plaintiff in such transportation."

"For the year 1937 application was made by plaintiff to the Commissioner of Revenue of the State of North Carolina for the issuance of a private hauler license for each tractor or truck and trailer used by plaintiff in such transportation."

"In each such application plaintiff represented to the Commissioner of Revenue that such tractor or truck and trailer would not be used in any contract or for hire haul."

"On the strength of such representations the Commissioner of Revenue of North Carolina, for the years 1935, 1936, and 1937, issued to plaintiff for each such tractor or truck and trailer used by plaintiff a private hauler license, and for each such license plaintiff paid an amount of money substantially less than would have been required for a contract hauler license."

"In performing all of the transportation of petroleum products mentioned in the complaint, plaintiff has operated under private hauler licenses."

"That the private hauler licenses were obtained by plaintiff with the purpose and intention of using said licenses for the transportation of petroleum products for hire and under contract of hire."

"That in obtaining said private hauler licenses and so using them plaintiff has defrauded the Department of Revenue of the State of North Carolina and the State of North Carolina, and the transportation of petroleum products for hire under contract of hire by him in vehicles licensed solely as private haulers has been in violation of the laws of the State of North Carolina."

"In securing the 'private hauler' licenses above mentioned for all of the vehicles used by plaintiff in his transportation of petroleum products as described in the complaint, plaintiff has stated the combined weights of the tractors, trailers and loads to be driven over the roads of the State. In connection with the issuance of each such license plaintiff has knowingly and intentionally and with the intent to defraud the State, grossly understated the combined weight of tractors, trailers and loads and has obtained from the State licenses based upon weights greatly less than the actual and true weights. By such fraudulent misrepresentations plaintiff has obtained licenses for sums greatly less than would have been charged by the State had plaintiff truly and correctly stated such weights. In connection with all of the transportation performed by plaintiff, as alleged in the complaint, plaintiff has operated his motor vehicles and containers under licenses fraudulently obtained by the understatement of weights and has operated each such vehicle contrary to the provisions of the laws of this State."

"In the transportation of petroleum products described in the complaint plaintiff has regularly and consistently and knowingly and intentionally violated the laws of the State of North Carolina as has been set forth above in this further answer and has knowingly and intentionally conducted an illegal business, and plaintiff is not entitled to recover any damage or loss of profits in this action, and plaintiff should not be permitted to claim or recover any profits growing out of his illegal operations and should not be permitted to claim or recover any damages to his illegal business. Defendant specifically pleads the illegality of plaintiff's transportation operations in bar of any right which plaintiff may have to recover in this action."

The plaintiff moved to strike out certain portions of the answer, including the above, upon the ground that they were irrelevant, redundant, and prejudicial. C. S., 537. The judge, allowing such motion in part, struck out all of the foregoing paragraphs of the answer, and defendants excepted and appealed.

*Cooper, Curlee & Sanders* for plaintiff, appellee.

*Craige & Craige and Murray Allen* for *Winston-Salem Southbound Railway Company.*

*Hobgood & Ward* for *Atlantic and Yadkin Railway Company.*

*R. B. Gwathney and Murray Allen* for *Atlantic Coast Line Railroad Company.*

*Robert H. Dye* for *Aberdeen & Rockfish Railway Company.*

*W. T. Joyner* for *High Point, Randleman, Asheboro and Southern Railroad Company.*

*W. T. Joyner* for *Yadkin Railroad Company.*

*W. T. Joyner and Long, Long & Barrett* for *Southern Railway Company.*

*W. S. O'B. Robinson, Jr., and Fuller, Reade & Fuller* for *Piedmont & Northern Railway Company,* defendants, appellees.

SEAWELL, J. In *Parsley v. Nicholson,* 65 N. C., 207, it is said: "The object of pleading, both in the old and new systems, is to produce proper issues of law or of fact, so that justice may be administered between parties litigant, with regularity and certainty." Pleadings serve to confine the controversy between the parties to some issue relating to a justiciable cause, so that the field of investigation may be defined and brought within reasonable limits. A party to an action is entitled as a matter of right to put into his pleading a concise statement of the facts constituting his cause of action or defense, and nothing more. C. S., 506; C. S., 519.

Upon motion made in apt time, an aggrieved party may have irrelevant or redundant matter stricken from his opponent's pleading, espe-

cially when such matter is prejudicial to him, or scandalous. C. S., 537. A motion under this statute has been held to be made as a matter of right and not addressed to the discretion of the court. *Bank v. Atmore,* 200 N. C., 437, 439, 157 S. E., 129.

Upon motion of plaintiff made under this statute, the trial judge struck out the paragraphs of the answers above listed, finding them to be irrelevant and prejudicial.

If the matter stricken out should be found to contain a valid defense not asserted elsewhere in the pleading, the defendants would be entitled to have it stand, no matter how prejudicial or scandalous. *Powell v. Cobb,* 56 N. C., 1; *Mitchell v. Brown,* 88 N. C., 156. And they could not complain if the matter stricken out contained no averment competent or necessary to the defense. This case, therefore, turns upon the relevancy of the deleted paragraphs of the answer, as setting up matters of defense.

An approved test of relevancy is whether the matter alleged is competent to be shown on the hearing. *Pemberton v. Greensboro,* 203 N. C., 514, 515, 172 S. E., 196.

The paragraphs stricken out of the answer by sections 1, 2, and 3 of the judgment are of the same tenor and may be considered together. They set up as a defense that the reduction of rates made by defendants has had the effect of reducing the price of gasoline to the consumer, with special reference to the vicinity of Burlington; that the result of a recovery by the plaintiff will be to destroy competition at Wilmington and raise the price of gasoline, and would therefore be in contravention of public policy, and his action is therefore legally barred.

If the defendants could establish the causal sequence between their reduction of rates and the lowering of prices on gasoline, it would not be available as a defense in this action. Such a result is as likely to follow an unlawful reduction of rates in carrying out the conspiracy charged in the complaint as it is to follow a lawful reduction brought about solely by economic conditions.

The public has no vested right in a pecuniary or economic advantage produced by an unlawful invasion of private right, designed to injure an individual.

As to the policy involved, the State has no policy directed toward the lowering of the price of gasoline, or any other commodity, although there is a strong public desire in this direction. The policy of the State on this subject is comprised and declared in the Constitution (Article I, section 31), in the statutes on Monopolies and Trusts (chapter 53 of the Consolidated Statutes), and in the common law on this subject, still recognized as in force here; and it comprehends both the raising and lowering of prices by unlawful means and for an unlawful purpose.

Generalizations respecting monopoly statutes, their purpose and effect, cannot be expected equally to fit them all, but it may be laid down as a principle common to our own laws that where an act has been directly condemned by the statute, no power resides in the court to balance the advantages of continuing the situation produced by defendants' violation of law against the advantages of granting the relief sought in the action, thereby making such a violator of the law a sort of economic Robin Hood who may, with judicial approval, plunder the individual in the interest of the needy public.

In the North Carolina case cited in defendants' brief, *Mar-Hof Co. v. Rosenbacker,* 176 N. C., 330, 97 S. E., 169, this Court had to reconcile a statute aimed against restraint of trade with the right of contract in partial restraint of trade, and held only that the restrictive terms of the statute did not affect that right. Of a similar nature are the decisions of the United States Supreme Court on the Sherman Anti-Trust Law cited in the brief. The conclusions drawn from them are not germane to the question before us.

Here we have a much more particularized law to deal with. It has nothing to do with the limitations of private contract or their relation to public policy or statutes against restraint of trade.

The suggested conflict between public interest and private right said to arise under the Sherman Anti-Trust Act cannot obtain under the North Carolina statute, as applied to this case, since that statute gives the individual whose business is destroyed a cause of action of such a nature, and under such conditions, that the temporary advantage incident to the process of eliminating a competitor must have been considered and subordinated to a superior legislative intent. The law looks at the transaction "in the long run," adopting the philosophy that the public is more interested in continuing competition than in reaping the temporary rewards of a fight in which it is extinguished. C. S., 2559; C. S., 2563 (3); *S. v. Coal Co.,* 210 N. C., 742, 188 S. E., 412.

We think, therefore, that this portion of the pleading was irrelevant.

The contention of the defendants that plaintiff was engaged in an illegal business and, *ipso facto,* could have no recovery for injury to such business, is not tenable under the alleged facts in this case.

There is no privilege license required in this State, either for the business of contract hauling or the business of private hauling, and there is no law which makes either unlawful because of noncompliance with any condition bearing upon the business itself. If this business was illegal, such result must come about through a construction of the motor vehicle laws cited in defendants' brief, which patently do not apply to the business in which the plaintiff was engaged, and not even to the manner in which it must be carried on, but only to the physical means which happened to be employed by plaintiff in its prosecution. Indeed, if the

business itself had required a license, the defendants would not be materially helped, since the trend of authority on this subject is to the effect that when a person engages in a business without procuring the license which the State requires for the privilege, he incurs the penalties which the statutes pertaining to the license provide, and none other. The matter rests between him and the licensing authorities, and the fact that the business is carried on without license is ordinarily not available as a defense by a third party in a suit growing out of liability incurred in the course of the business, or in relation thereto. 31 C. J., page 259, section 137. There are cases, not inconsistent with this view, holding *contra,* (a) where the licensing statute directly forbids the business itself, if carried on without license; (b) where the nature of the business renders it a proper subject of police regulation and the license is clearly referable to an exercise of that power; (c) and where the statute itself expressly denies to the unlicensed person any recovery in the courts upon contracts made in the course of business. They may be found under above citation.

In *Vermont Loan & Trust Company v. Hoffman,* 5 Idaho, 376, 49 P., 314, the Court passed upon a statute of Idaho requiring a license to be procured before engaging in the business of loaning money and declaring it a misdemeanor to transact such business without it. Defendant, in an action to recover for money loaned, set up as a defense that the business was unlawful, and the plaintiff having no license to engage in it was violating a state law and could not recover. In affirming the action of the trial court in sustaining a demurrer to that defense, the Supreme Court said: "From a careful study of all the authorities, we think that the better class of authorities and the better reasoning leads to the conclusion that, where the prohibition is implied from a penalty imposed, as in the case at bar, the prohibition being for the protection of the public revenue, and no declaration in the statute making the prohibited act void, the doing of such act is not illegal. There is nothing in our statutes which makes it unlawful to loan money at interest. There is nothing in our statutes which says that it is unlawful to follow the business of loaning money at interest. Such business is not *malum in se,* nor is it *malum prohibilum.* Anyone may conduct the business, but, under our statutes, if he does so, he must obtain the license, and if he carries on such business without paying the license tax and obtaining the license, he is guilty of a misdemeanor. The offense consists not in doing the business, for that is not prohibited, but in failing to pay the license tax. The statute was passed, not to protect the public, not to protect the borrower, nor to prevent the loaning of money at interest, but for the purpose of raising the revenue to be derived from the license taxes to be collected from those persons who should engage in the business of loaning money at interest. . . ."

In *Wood v. Krepps,* 168 Cal., 382, 143 P., 691, an authority much cited on this subject, the foregoing from *Vermont Loan & Trust Company v. Hoffman, supra,* is approved, and the Court concludes as to the case before it as follows: "The Legislature may, within the limits of the Constitution, prescribe traffic regulations, and may impose upon a business a tax, and require persons intending to engage in such business to obtain, before doing so, a license; and we think the Legislature might go one step further and say that whoever should engage in any business upon which a license tax is imposed without first paying such license tax should not only be fined and imprisoned, one or both, but that such person should not recover upon any contract made by him while engaged in such business without a license. But the Legislature has not done so, nor has it shown any intention to attend such forfeiture upon a person violating the statute. Having specified the penalty for a violation of the statute, and further provided for the collection of the license tax with damages, we are authorized to and do conclude that the Legislature did not intend that any further punishment should be inflicted."

When the object of a statute requiring those who transact certain business to be licensed is the production of revenue and not the regulation of the business, in the interest of public health, morals, or policies, contracts made in the course of such business are valid. *Wood v. Krepps, supra,* 141 P., 691, 692; *Mandelbaum v. Gregovich,* 17 Nev., 87, 28 P., 121; *Howard v. Lebby,* 197 Ky., 324, 246 S. W., 828.

The statutes discussed in *Coates v. Locust Point Company,* 102 Md., 291, 62 Atl., 625, and in *Banks v. McCosker,* 82 Md., 518, 34 Atl., 625, required a license to do the particular business and made it a misdemeanor to do business without it. The Court said: "When the law declares the consequence of its violation, the contract can in no sense be regarded as illegal unless the law itself, either by its manifest intent or in express terms, so declares it. The provisions of the Code referred to neither directly nor indirectly refer to any consequences save the payment of a fine." The Court held the business not to be illegal. *Sunflower Lumber Co. v. Turner Supply Co.,* 158 Ala., 191, 48 So., 510; *Armstrong v. Tolar,* 11 Wheat., 258, 6 L. Ed., 468; *Larned v. Andrews,* 106 Mass., 435; *Hughes v. Snell,* 28 Okla., 828; *Fairley v. Wapoo Mills,* 44 S. C., 227, 22 S. E., 108; *S. v. Pierce Co., Super Ct.,* 42 Wash., 675, 85 P., 669. Citations may be made in almost unlimited number.

The Motor Vehicle Act, N. C. Code, 1935, sec. 2621, *et seq.,* requiring that licenses be procured for motor vehicles used upon the highways, is based upon the servitude put upon the highways by such use, and the advantage which the improved highways may afford the business in which the motor vehicle is employed. Sec. 2621 (31) (c). The difference in the cost of license is based—roughly, it may be—upon the usage to which the road is subjected, either by the weight of the loading

or by the frequency of the use, or both. The license pertains to the motor vehicle and not to the business in which it is used.

Various statutes denounce as misdemeanors acts and omissions in connection with the procurement and use of motor vehicle licenses, and the use of the road without proper license. They are far too numerous to mention here, and most of them have no relation to the matter at hand. The most restrictive of these statutes are quoted in defendants' brief, which relies particularly on sec. 2621 (29), which statute makes it a misdemeanor to operate a motor vehicle without a license; and we assume that this may be construed to mean without the appropriate license designated by the law.

Practically all of the authorities cited in defendants' brief, in support of their position that the plaintiff was engaged in an illegal business, deal with laws referable to the exercise of the police power and these laws bear directly upon the business concerned.

In *Lloyd v. R. R.,* 151 N. C., 536, 66 S. E., 604, the Court was dealing with a personal injury action, growing out of chapter 456 of the Public Laws of 1907, relating to hours of labor—distinctly a police regulation— and the citations are all pertinent to that principle. In *Courtney v. Parker,* 173 N. C., 479, 92 S. E., 324, the Court was dealing with chapter 77 of the Public Laws of 1931, regulating the conducting of business under an assumed name, and making certain conditions precedent thereto —again a police regulation. In *Godwin v. Telephone Co.,* 136 N. C., 258, the Court declined to compel the installation of a telephone in a bawdy house in aid of a business *per se* illegal. In *Finance Co. v. Hendry,* 189 N. C., 549, 127 S. E., 629, the statute considered was again —C. S., 3288—regulating the carrying on of a business under an assumed name. In *Fashion Co. v. Grant,* 165 N. C., 453, 81 S. E., 606, the Court was dealing with contracts made in violation of the express provisions of chapter 167, section 1 (a), of the Public Laws of 1911, forbidding agreements that the purchaser should not sell the same commodity in his store manufactured by other parties. In *Pfeifer v. Israel,* 161 N. C., 409, 77 S. E., 421, and *Pfeifer v. Drug Co.,* 171 N. C., 214, 88 S. E., 343, the Court was dealing with the unlicensed sale of liquor. In *Young v. Stevens,* 75 Ark., at page 183, and in *Stephenson v. Primrose,* 8 Port. (Ala.), 155, 167, the Court dealt with matters strictly of a police nature. Indeed, the position of the Supreme Court of Alabama on this subject may be found in *Morgan v. Whatley,* 205 Ala., 170, 87 So., 846, 849, and in *Sunflower Lumber Co. v. Turner Supply Co., supra,* and it is contrary to the position taken by the defendants.

There seems to be no authority for the position that the failure to procure proper licenses for the trucks employed in the plaintiff's business would so affect the business as to make it illegal and bar recovery, and we are of the opinion that there is nothing in the cited statutes which can have that effect.

It must be observed further with regard to this part of the answer that the plaintiff is also charged with fraud and misrepresentation and a violation of the criminal law in procuring the licenses for his trucks and trailers. There is no logical connection between such fraud, if it existed, and any defense which is competent for the defendants to make in this action.

Since the matter stricken out constitutes no valid defense, there is nothing of which the defendants can complain. But it is not improper to refer briefly to the propriety of allowing the motion to strike out.

The matters alleged in the answer could hardly be considered as entirely without prejudicial effect on plaintiff's case. The answer prominently features a reduction in the price of gasoline as being a desirable result, a point on which there is some unanimity of opinion; and it may not be merely casual that, in a selective paragraph, the spearhead of this attack on plaintiff's position is directed toward Alamance County, from which the jury must be drawn, and where the case must be tried. Also, since the plaintiff is charged with a violation of the criminal law and of defrauding the State of its revenues in a way calculated to be offensive to taxpayers, this would hardly recommend his cause to the jury.

The defendants have been deprived of no competent defense which may not be adequately presented under the present pleadings, and the judgment is

Affirmed.

DEVIN, J., dissenting: 1. I find myself unable to agree with the majority opinion that the allegations in the answers of the defendants, that the reduction in freight rates has resulted in lowering the price of gasoline to consumers, should be stricken out as irrelevant. The basis for the court's ruling is that evidence of that fact would be inadmissible in the trial.

The gravamen of the charge in the complaint is that the defendants entered into an unlawful conspiracy in restraint of trade and for the promotion of a monopoly in the transportation of gasoline, with the purpose and intention of injuring the business of the plaintiff. By this action plaintiff seeks to recover compensation for losses sustained, and for treble damages, under the punitive provisions of the statute. Is it then improper for the defendants in the denial of an unlawful conspiracy, and in support of allegations of proper exercise of legal rights, to allege, in further defense, the establishment of competitive rates and the favorable result of such competition to the public? Are not all the circumstances relating to and attendant upon the wrongful acts complained of competent to be shown in evidence?

The acts alleged in the complaint and relied upon to show an unlawful conspiracy in restraint of trade, under the statute, C. S., 2563 (3), must have been willfully done and with the purpose and intention of injuring the business of a competitor. While the plaintiff in this action is not concerned with the public policy of monopoly statutes, it must not be overlooked that in the interpretation of these statutes and their enforcement the public interest is necessarily to some extent involved. The main purpose of these laws is to protect the public from monopolies and contracts in restraint of trade. Individual action is incidental. It was held in *Standard Oil Co. v. U. S.,* 221 U. S., 1, that the prevention of injury to the public by undue restraint on trade or commerce is the foundation upon which the prohibitions of the statute rests. The basis of every monopoly statute and of every monopoly suit is the welfare of the public. Hence, the nature of the restraint and its effects are to be considered as bearing on the legality of the contract alleged to have been entered into with the intent to injure the business of the complainant.

The rule laid down by the Supreme Court of the United States in construing similar Federal statutes on this subject is "that only such contracts and combinations are within the act as, by reason of intent or the inherent nature of the contemplated act, prejudice the public interest by unduly restricting competition or unduly obstructing the course of trade." *Nash v. U. S.,* 229 U. S., 373. This statement was quoted with approval in the recent case of *Appalachian Coals, Inc., v. U. S.,* 288 U. S., 344.

While these statements by the Court were made with reference to criminal prosecutions under the Federal statutes, in *Mar-Hof Co. v. Rosenbacker,* 176 N. C., 330, 97 S. E., 169, *Hoke, J.,* states the rule under the North Carolina statute as follows: "Originally at common law, agreements in restraint of trade were held void as being against public policy. The position, however, has been more and more modified by the decisions of the courts until it has come to be the very generally accepted principle that agreements in partial restraint of trade will be upheld when they are 'founded on valuable considerations, are reasonably necessary to protect the interests of the parties in whose favor they are imposed, and do not unduly prejudice the public interest.' " And there is the further statement in the opinion in the *Mar-Hof Co. case, supra,* that the purpose of the Legislature in these statutes was "to subject agreements coming under the provisions of this section to the standard of their reasonableness, to be determined by the character of the transaction and the purpose of the parties concerning it as disclosed in the contract and the facts and circumstances permissible and relevant to its proper interpretation." See *Shoe Co. v. Department Store,* 212 N. C., 75; *S. v. Coal Co.,* 210 N. C., 742, 188 S. E., 412.

Can it be said, in a case instituted under our monopoly statutes, that under no circumstances and in no view of the case would the effect of the alleged unlawful combination between the defendants to lower freight rates on gasoline be admissible in evidence. If not, then there was error in striking out the pertinent allegations of the answers.

2. I am unable to agree with the majority opinion that the allegations in the answers, to the effect that the plaintiff in the conduct of his business was operating trucks improperly licensed and in violation of law, should be stricken out as irrelevant and in no view of the case admissible in evidence.

It is fundamental that an action will not lie when the plaintiff must base his claim in whole or in part upon his own wrongful or unlawful conduct or on a violation by himself of the criminal laws of the State. *Lloyd v. R. R.,* 151 N. C., 536, 66 S. E., 604; *Brown v. Brown,* 213 N. C., 347. The established rule is that to constitute a defense on this ground, the illegality with which plaintiff is chargeable must have a causative connection with the particular transaction out of which the action arose, that is, when the illegality relied on is inherent in the cause of action, and directly connected with the relief sought. *Laughran v. Laughran,* 292 U. S., 216; 1 Corp. Jur. Secundum, 1000.

Here, the complaint alleges a cause of action for damages for injury to plaintiff's business which consisted in the operation of motor trucks on the State Highway in the transportation of gasoline. In the answer it is alleged that plaintiff, in the conduct of the very business which he claims was injured, was operating unlicensed or improperly licensed trucks in violation of the law, and that each time he used a truck in his business of transporting gasoline he committed a misdemeanor, and that his business, which he alleges was wrongfully injured by the acts of the defendants, consisted in operations forbidden by law. It would seem that the illegality alleged in the answers has direct relation to the transactions out of which the alleged cause of action arose, and hence may properly be set up in the answer as a defense. If, as alleged, plaintiff was using only unlicensed trucks, in violation of the penal provisions of the motor vehicle law, he could not lawfully operate them on the highway, whether loaded with gasoline or not, and loss of profits therefrom would not constitute a legitimate element of damages.

While the several answers in setting out this defense may be subject to the criticism of prolixity and redundancy, the material allegations of violation of law in the use of plaintiff's trucks on the highway should not be stricken out as irrelevant and as containing matters incompetent to be shown in evidence.

Relative to motions to strike out, it has been well said in several recent decisions of this Court that "the questions involved could be better determined by rulings upon the competency of the evidence, if and when

offered, than by undertaking to chart the course of the trial by passing upon allegations as yet undenied." *Pemberton v. Greensboro,* 205 N. C., 599, 172 S. E., 196; *Hardy v. Dahl,* 209 N. C., 746, 184 S. E., 480; *Scott v. Bryan,* 210 N. C., 478, 187 S. E., 756; *Poovey v. Hickory,* 210 N. C., 630, 188 S. E., 78.

The plaintiff's suggestion that the matters asked to be stricken out might prove unduly prejudicial to the plaintiff, a resident of Alamance County, before an Alamance County jury, when read from the answers of the several railroad companies, defendants, does not afford serious ground of apprehension.

BARNHILL, J., concurs in dissent.