**CENTRAL MARYLAND LINES, INC.**
v.
**UNITED STATES of America**
and
**Interstate Commerce Commission.**
**Civ. No. 14901.**

United States District Court
D. Maryland.
April 13, 1965.

James J. Doherty, Baltimore, Md. (Friedman & Goodman, Baltimore, Md., of counsel), for plaintiff.

William H. Orrick, Jr., Asst. Atty. Gen., Thomas J. Kenney, U. S. Atty., John H. D. Wigger, Attorney, Department of Justice, for United States of America.

Robert W. Ginnane, General Counsel, and Leonard S. Goodman, Washington, D. C., Attorney, for Interstate Commerce Commission.

Before SOBELOFF, Circuit Judge, and THOMSEN and WINTER, District Judges.

THOMSEN, District Judge.

This is an action under sections 1336, 1398, 2284 and 2321–2325 of Title 28, United States Code, to set aside orders of the Interstate Commerce Commission (ICC) dated February 4, 1963, and March 29, 1963, in Central Maryland Lines, Inc., Determination of Second Proviso Eligibility (Randallstown, Maryland), Docket No. MC–C3972, 92 M.C.C. 737. By those orders the ICC denied plaintiff's petition for an order which would "accept as registered" under the second proviso of section 206(a) (1) of the Interstate Commerce Act (the Act), 49 U.S.C.A. § 306(a) (1), as that section read before October 15, 1962, certain Maryland operating authorities issued by the Public Service Commission of Maryland (PSC), and for other relief.

### The Statute

Section 206(a) of the Act was amended by P.L. 87–805, §§ 1, 2, 76 Stat. 911, approved October 15, 1962. See 49 U.S.C.A.

§ 306(a) (1) (6) and (7). Before October 15 the second proviso of section 206 (a) (1), see note 1 below, provided an exemption from the broad policy of the Act that all common carriers operating in interstate or foreign commerce must obtain a certificate of public convenience and necessity from the ICC. The legislative history of P.L. 87–805 shows that various abuses of that exemption had arisen, which Congress intended to correct.[2]

The first section of P.L. 87–805, 76 Stat. 911, eliminated the second proviso from paragraph (1) of section 206(a). The second section added three new paragraphs to section 206(a), namely, paragraphs (6), (7) (A) and (7) (B). Paragraph 6 established stricter standards for registering intrastate certificates of public convenience and necessity. Paragraph (7) (A), see note 3 below, extended "grandfather" rights to certain carriers who on the date of the enactment were

1. The pertinent portions of section 206 (a) (1) read as follows, the second proviso being the portion after the asterisks:

"Except as otherwise provided in this section and in section 210a, no common carrier by motor vehicle subject to the provisions of this part shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: * * * *And provided further*, That this paragraph shall not be so construed as to require any such carrier lawfully engaged in operation solely within any State to obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such State having authority to grant or approve such certificates and if such carrier has obtained such certificate from such board. Such transportation shall, however, be otherwise subject to the jurisdiction of the Commissioner under this part."

2. See H.Rep. No. 1090, 87th Cong., 1st Sess., U.S.Code Cong. & Adm.News, vol. 2, 1962, p. 3165.

3. "(7) (A) In the case of any person who or which on the date of the enactment of this paragraph was in operation solely within a single State as a common carrier by motor vehicle in intrastate commerce (excluding persons controlled by, controlling, or under a common control with, a carrier engaged in operations outside such State), and who or which was also lawfully engaged in such operations in interstate or foreign commerce under the certificate exemption provisions of the second proviso of paragraph (1) of this subsection, as in effect immediately before the date of the enactment of this paragraph or who or which would have been so lawfully engaged in such operations but for the pendency of litigation to determine the validity of such person's intrastate operations to the extent such litigation is resolved in favor of such person, and has continued to so operate since that date * * * the Commission shall issue to such person a certificate of registration authorizing the continuance of such transportation in interstate and foreign commerce if application and proof of operations are submitted as provided in this subsection * * *."

lawfully engaged in operations under said second proviso, or who would have been lawfully engaged in such operations but for the pendency of specified litigation. Paragraph (7) (B), see note 4 below, granted such persons a grace period of 120 days within which to file their applications for certificates of registration under paragraph (7) (A).

### Facts and Proceedings

In September 1962 plaintiff, a Maryland corporation, purchased certain assets of Tidewater Express Lines, Inc., which had conducted, inter alia, operations as a motor carrier of freight in intrastate commerce between specified points in Maryland.[5] Since Maryland law does not permit the transfer of intrastate operating authority,[6] plaintiff was required to file an application with the PSC for the issuance of permits to operate over the routes formerly served by Tidewater. Such an application was filed on October 9, 1962. Meanwhile, plaintiff had begun to conduct certain intrastate operations which were exempt from regulation by the PSC.

On October 15, 1962, the PSC issued to plaintiff permits [7] to operate as a motor common carrier in intrastate commerce of freight between specified points in Maryland. Later that day plaintiff began its intrastate operations under one or more of the permits issued by the PSC. Plaintiff has never conducted any interstate operations.

On October 16, 1962, in purported compliance with 49 C.F.R. 210.10, the ICC's published procedure for handling such matters under the law as it stood before the October 15, 1962 amendments, plaintiff tendered to the ICC a Form BMC–75 statement of its intent to operate as a motor common carrier in interstate or foreign commerce pursuant to the certificate exemption provisions of the second proviso of section 206(a) (1). The statement was not accepted for filing; so by petition filed on November 7, 1962, and supplemented on November 15, 1962, plaintiff sought an order which would "accept as registered" under said second proviso the Maryland operating permits referred to above.

In an order dated February 4, 1963, 92 M.C.C. 737, the ICC noted that P.L. 87–805, amending section 206(a), had become effective on October 15, 1962, and that "on October 16, 1962, the date of the described tender, the right to engage in operations in interstate and foreign commerce under the provisions of the former second proviso of section 206(a) (1) of the act had ceased and terminated and said exemption was no longer in force and effect; that on such date there was no provision in part II of the Interstate Commerce Act pursuant to which the BMC–75 statement of intent to engage in interstate or foreign commerce tendered by Central Maryland Lines, Inc., could be lawfully received, filed, or accepted." The ICC, therefore, denied the petition, and notified plaintiff that its Form BMC–75 statement supported by its Maryland permits was of no force or effect and could not be accepted for filing,

---

4. "(7) (B) All rights to engage in operations in interstate and foreign commerce under the provisions of the second proviso of paragraph (1) of this subsection, as in effect immediately before the date of the enactment of this paragraph, shall cease and terminate, but any carrier lawfully engaged in interstate and foreign operations on the date of the enactment of this paragraph or any carrier who would have been so lawfully engaged in such operations but for the pendency of litigation to determine the validity of such person's intrastate operations to the extent such litigation is resolved in favor of such person, pursuant to such provi-

sions, may continue such operations for 120 days after such date and, if an appropriate application for a certificate of registration is filed within such period, such operations may be continued pending the determination of such application * * *."

5. Tidewater also held certificates issued by the ICC authorizing operations in interstate or foreign commerce between points in more than a single state.

6. Annotated Code of Maryland, 1957 ed., Article 78, section 32.

7. Nos. 62F–146 through 62F–151.

and that the carrier could not engage thereunder in operations in interstate or foreign commerce. On March 11, 1963, plaintiff filed a petition for reconsideration of the February 4 order, which was denied on March 29, 1963. Plaintiff filed suit in this Court on August 6, 1963.

Meanwhile, on February 12, 1963, plaintiff had filed with the ICC an application for a motor carrier "grandfather" certificate of registration under section 206(a) (7), Form BOR 99, 49 C.F.R. 7.99.

### Discussion

Plaintiff argues that the amendments to section 206(a) of the Act did not become effective until October 16, 1962, the day after its approval by the President, that plaintiff began its intrastate operations under its Maryland PSC permits on October 15, immediately after those permits were issued, and that plaintiff therefore had a vested right to register under the second proviso of section 206 (a) (1), as that section read before the effective date of the amendments.

The amendments to section 206(a) indicate clearly that they were to become effective on October 15, 1962. P.L. 87–805 bears the notation "Approved October 15, 1962." 76 Stat. 913. Paragraph (6) begins: "On and after the date of the enactment of this paragraph * *." That language has been codified as "On and after October 15, 1962", 49 U.S.C.A. § 306(a) (6). Paragraphs (7) (A) and (7) (B) refer to persons engaged in certain operations "on the date of the enactment of this paragraph", which was also codified as "on October 15, 1962".

Plaintiff argues that the words "on and after" should be interpreted as though they read "from and after", and cites cases holding that when the phrase "from and after" is used, a statute does not go into effect until the next day.[8] There is authority the other way,[9] but that conflict is immaterial, because the phrase "from and after" does not appear in the statute under consideration. Plaintiff further attempted but failed to show that the hour of approval of P.L. 87–805 by the President was after the hour of the issuance of plaintiff's Maryland permits by the PSC. Statutes rarely show the hour of approval by the President; P.L. 87–805 shows only that it was "Approved October 15, 1962"; the Congressional Record relates that the "President * * * notified the Secretary of the Senate that on the following dates he had approved and signed the following bills and joint resolutions", and lists S. 320 (P.L. 87–805) as approved "on October 15, 1962".[10]

The general rule appears to be that in the absence of a record of the exact time at which a statute was enacted, it is regarded as in effect from the first moment of the day on which it was enacted. Arnold v. United States, 9 Cranch (13 U.S.) 103, 119, 3 L.Ed. 671 (1815); Leidigh Carriage Co. v. Stengel, 6 Cir., 95 F. 637, 640 (1899); Lloyd v. North Carolina R. Co., 151 N.C. 536, 66 S.E. 604, 45 L.R.A.,N.S., 378 (1909); 82 C.J.S. Statutes § 406. Plaintiff could not have acquired *any* rights under the second proviso of section 206(a) (1), since the Maryland PSC permits were issued and plaintiff's intrastate operations thereunder began after the statute eliminating the second proviso took effect.

There is another reason why plaintiff was not entitled to file the registration statement which it attempted to file on October 16, 1962. The second proviso excused a carrier operating in intrastate commerce under a state permit from obtaining from the ICC a certificate of public convenience and necessity to operate in interstate commerce, but it provided that such transportation should "be otherwise subject to the jurisdiction of the

---

8. Zimmerman v. United States, 7 Cir., 277 F. 965 (1921), and Parkinson v. Brandenburg, 35 Minn. 294, 28 N.W. 919, 59 Am.Rep. 236 (1886).

9. People v. Nye, 9 Cal.App. 148, 98 P. 241, 246, (1908), rehearing denied by Cal.Sup.Ct., Nov. 30, 1908.

10. See 108 Cong.Rec. A7962, October 30, 1962.

Commission under this part". In Hart v. I.C.C., D.Minn., 226 F.Supp. 635 (1964), the Court said:

> "The proviso means only that once a State has determined that operations of a carrier serve the public convenience and necessity, a carrier cannot be required to obtain an Interstate Commerce Commission certificate of public convenience and necessity in order to carry on interstate transportation within the State. Navajo Freight Lines, Inc v. U. S., 186 F. Supp. 377, 380 (D.C.Colo. 1960) (Three Judge Court); Gulf Coast Motor Freight Lines v. U. S., 35 F. Supp. 136, 137 (S.D.Tex. 1940) (Three Judge Court). There is nothing in the wording of the statute which requires the conclusion plaintiffs draw that the second proviso rights vest by the statute; rather, it seems the better construction to view a Commission determination that the conditions have been met as a prerequisite to second proviso authority." 226 F.Supp. at 641.[11]

■ Plaintiff's registration statement was filed on October 16, 1962, the day after all rights to engage in interstate and foreign commerce under the second proviso had ceased and terminated. Plaintiff's right to operate in interstate commerce, therefore, never vested under the second proviso, and plaintiff must now conform to the requirements of section 206(a) as amended before it may engage in interstate commerce.

The 1962 amendments, see notes 3 and 4 above, extended "grandfather" rights to certain carriers who (1) on October 15, 1962, were lawfully engaged in intrastate operations in a single state, and (2) on that date were also lawfully engaged in such operations in interstate commerce under the second proviso, or would have been so engaged in such operations but for "the pendency of litigation to determine the validity of such person's intrastate operations". Plaintiff was admittedly not engaged in any operation in interstate commerce on October 15, 1962. It contends, however, that its application for the state rights in question was filed on October 9, 1962, and amounted to "pending litigation to determine the validity" of plaintiff's intrastate operations on October 15. It then claims that the intrastate rights are subject to the specific exception of the new Act referred to above.

■ There is some question whether plaintiff may rely on its "pendency of litigation" argument in this proceeding, because it has not exhausted its administrative remedies. The application (Form BMC 99) which plaintiff filed with the ICC on February 11, 1963, has not yet been acted upon by the ICC. In view of the delay, we have considered plaintiff's argument, but find it without merit. The "pendency of litigation" clause refers to "litigation to determine the validity" of the carrier's intrastate operations, and does not include applications by the carrier to a state regulatory body for a

---

11. The ICC construed the second proviso as requiring registration before any right to engage in interstate or foreign commerce vested in a motor carrier. Eg., the regulations of the Commission in effect immediately prior to the 1962 amendments stated that any common carrier "who after the effective date of this order proposes to engage in any operations in interstate or foreign commerce under the second proviso * * * shall, prior to commencing such operations" file a statement of the proposed operations and comply with other regulations regarding issuance and tariff filing, 49 C.F.R. 210.10. See also 8 F.R.

12519, September 11, 1943; Motor Carrier Insurance for Protection of the Public, 1 M.C.C. 45, 46–47 (1936).

Approval by the ICC has not always been automatic. The ICC was obliged to take cognizance of the National Transportation Policy declared in the Act and to apply the Act as a whole. See Buckeye Express, Inc. v. United States, 14 Federal Carriers Cases, ¶ 81,303 (S.D. Ohio, 1960).

Congress has recognized that registration was required to vest a right to engage in interstate commerce under the second proviso. See H.Rep. No. 1090, supra, note 2.

certificate which will permit it to begin such operations.

The injunctive relief prayed in the complaint must be denied, and the complaint dismissed. Counsel should agree on a form of order.