**VALLEY EXPRESS, INC., Plaintiff,**

v.

**UNITED STATES of America and In-
terstate Commerce Commission,
Defendants.**

**No. 65–C–107.**

United States District Court
W. D. Wisconsin.

Oct. 31, 1966.

Donald R. Peterson, Milwaukee, Wis.,
for plaintiff.

Edmund A. Nix, U. S. Atty., Madison,
Wis., Joe F. Newlin, Dept. of Justice,
Donald P. Turner, Asst. Atty. Gen., Rob-
ert W. Ginnane, Gen. Counsel, I. C. C.,
Manny H. Smith, Atty., I. C. C., Wash-
ington, D. C., for defendants.

Before DUFFY, Senior Circuit Judge,
GRUBB, Senior District Judge, and
DOYLE, District Judge.

JAMES E. DOYLE, District Judge.

This is an action to annul, vacate and
enjoin permanently enforcement of an

order of the Interstate Commerce Commission, Division I, entered June 15, 1965, in Docket No. MC–120398 (Sub–No. 1), Valley Express, Inc. (Schofield, Wisconsin). This order affirmed an order of the ICC Operating Rights Board No. 2, of September 9, 1964, whereby the ICC denied registration of plaintiff's Wisconsin Motor Carrier Certificates No. CC–877 Amendment No. 1 dated July 20, 1962, and No. CC–877 Amendment No. 2 dated October 4, 1962.

Valley Express, Inc., was incorporated as a motor carrier in September 1959 to serve several small towns in central Wisconsin after rail service to those towns was discontinued. The Wisconsin Public Service Commission gave Valley Express, Inc., a Common Motor Carrier Certificate, No. CC–877, authorizing it to provide intrastate service to certain of these small communities. In October 1959 Valley Express, Inc., obtained from the ICC interstate operating rights cöextensive with those granted by Certificate No. CC–877. Plaintiff was thus authorized to transport both interstate and intrastate shipments over its routes in central Wisconsin.

In December 1959 Valley Express, Inc., petitioned the Wisconsin Public Service Commission for additional intrastate authority. This petition was subsequently denied, as was also a second petition filed in July 1961. A third petition was granted in part on July 20, 1962, by the granting of Amendment No. 1 to Certificate No. CC–877. A rehearing was held by the Wisconsin Public Service Commission, and on October 4, 1962, the remainder of the requested additional intrastate authority was granted in the form of Amendment No. 2 to Certificate No. CC–877.

On January 28, 1963, Valley Express, Inc., filed with the ICC an application seeking a "grandfather" certificate of registration pursuant to Section 206(a) (7) of the Interstate Commerce Act [49 U.S.C. § 306(a) (7)] to cover interstate operations within the additional intrastate authority granted in Amendments Nos. 1 and 2 to its Wisconsin Certificate

No. CC–877. The ICC denied this request on September 9, 1964, and affirmed this denial by the order of June 15, 1965, which is attacked in the present proceeding.

Prior to October 15, 1962, there had been in effect a so-called "Second Proviso," by the terms of which a common motor carrier might be excused from the requirement that it obtain from the ICC a certificate of public convenience and necessity before engaging in interstate operations on public highways. This Second Proviso was contained in Section 206(a) (1) of the Act, and it declared that the statutory requirement of such an ICC certificate of public convenience and necessity

" * * * shall not be so construed as to require any such carrier lawfully engaged in operation solely within any State to obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such State having authority to grant or approve such certificates and if such carrier has obtained such certificate from such board. Such transportation shall, however, be otherwise subject to the jurisdiction of the Commission under this chapter."

As explained in Central Maryland Lines, Inc. v. United States, 240 F.Supp. 254, 255–256 (D.Md.1965):

"Section 206(a) of the Act was amended by P.L. 87–805, §§ 1, 2, 76 Stat. 911, approved October 15, 1962. See 49 U.S.C.A. § 306(a) (1) (6) and (7). * * * The first section of P.L. 87–805, 76 Stat. 911, eliminated the second proviso from paragraph (1) of section 206(a). The second section added three new paragraphs to section 206(a), namely, paragraphs (6), (7) (A) and (7) (B). Paragraph 6 established stricter standards for registering intrastate certificates of public convenience and necessity. Paragraph (7) (A) * * * extended 'grandfather' rights to certain carriers who

on the date of the enactment were lawfully engaged in operations under said second proviso, or who would have been lawfully engaged in such operations but for the pendency of specified litigation. Paragraph (7) (B) * * * granted such persons a grace period of 120 days within which to file their applications for certificates of registration under paragraph (7) (A)."

The new Section 206(a) (7) (A) of the Act [49 U.S.C. § 306(a) (7) (A)] provides, in part:

"In the case of any person who or which on October 15, 1962, was in operation solely within a single State as a common carrier by motor vehicle in intrastate commerce * * *, and who or which was also lawfully engaged in such operations in interstate or foreign commerce under the certificate exemption provisions of the second proviso of paragraph (1) of this subsection, as in effect immediately before October 15, 1962, or who or which would have been so lawfully engaged in such operations but for the pendency of litigation to determine the validity of such person's intrastate operations to the extent such litigation is resolved in favor of such person, * * * the Commission shall issue to such person a certificate of registration authorizing the continuance of such transportation in interstate and foreign commerce if application and proof of operations are submitted as provided in this subsection."

Valley Express, Inc., claims that it comes within the provisions of this statute in two ways: (1) that on October 15, 1962, it was "lawfully engaged in such operations in interstate or foreign commerce under the certificate exemption provisions of the second proviso of paragraph (1) of this subsection, as in effect immediately before October 15, 1962 * * *"; and (2) that even if it should be determined not to have been so "lawfully engaged" on October 15, 1962, it "would have been so lawfully engaged in such operations but for the pendency of litigation to determine the validity of [its] * * * intrastate operations" and that such litigation had been resolved in its favor.

1. *On October 15, 1962, plaintiff was not "lawfully engaged" in interstate operations under the "Second Proviso."*

▄ First, there is no allegation in the complaint that plaintiff was engaged in such interstate operations on October 15, 1962, whether "lawfully" or otherwise. Second, such operations, if engaged in on said date, could not have been "lawfully engaged in." The "second proviso," it is true, had exempted a carrier under certain circumstances from the requirement of obtaining an ICC certificate of convenience and necessity. However, that second proviso also declared: "Such transportation shall, however, be otherwise subject to the jurisdiction of the Commission under this chapter." Thus although on and prior to October 15, 1962, plaintiff might have been exempt from showing public convenience or necessity for the interstate services it proposed to render in conjunction with the intrastate authority granted by Amendments Nos. 1 and 2 to its Wisconsin certificate, it was not relieved from compliance with other regulations of the ICC then in force, such as 49 C.F.R. § 210.-10(a):

"210.10 Interstate operations by motor common carriers within a single State under State authority.

"(a) *Statement of operations.* Every common carrier by motor vehicle, except as otherwise provided herein, who after the effective date of this order proposes to engage in any operations in interstate or foreign commerce under the second proviso of section 206 (a) (1), Interstate Commerce Act [49 U.S.C. § 306(a) (1)], * * * shall, prior to commencing such operations, (1) file with the Interstate Commerce Commission, Washington, D. C., a verified statement of the proposed operations, which statement shall be in the form and contain the information called for in Form BMC 75 (Revised),

and (2) comply with the provisions of sections 215 and 217 of the said act and the Commission's requirements and rules and regulations thereunder pertaining to the filing of proper evidence of security for the protection of the public and to the filing and posting of appropriate tariff or tariffs: *Provided, however,* That any such carrier operating under the said proviso pursuant to appropriate prior filing with the Commission shall not, so long as the prior filing remains in effect, be required to file any further statement concerning operations covered by such prior filing."

Neither on October 15, 1962, nor at any time prior thereto, had plaintiff filed with the ICC a verified statement of intent to engage in interstate commerce under the additional authority granted by the Wisconsin Public Service Commission in Amendments Nos. 1 and 2 to Certificate No. CC–877. Therefore, plaintiff was not *"lawfully* engaged in such operations in interstate or foreign commerce under the certificate exemption provisions of the second proviso of paragraph (1) of this subsection, as in effect immediately before October 15, 1962 * * *." [Emphasis added.] See Central Maryland Lines, Inc. v. United States, 240 F.Supp. 254, 257–58 (D.Md. 1965); Hart v. ICC, 226 F.Supp. 635, 641 (D.Minn.1964).

2. *No "litigation" was pending on October 15, 1962, within the meaning of Section 206(a) (7) (A) of the Act.*

■ Plaintiff contends, in the alternative, that it comes within the provisions of Section 206(a) (7) (A) of the Act [49 U.S.C. § 306(a) (7) (A)] because it would have been lawfully engaged in interstate operations "but for the pendency of litigation" concerning the validity of its intrastate operations. Plaintiff characterizes its lengthy struggle before the Wisconsin Public Service Commission to obtain the additional intrastate authority embodied in Amendments Nos. 1 and 2 as the "litigation" which prevented it from operating in interstate commerce,

as to that phase of its operations, on October 15, 1962, and prior thereto. This court cannot agree that proceedings before the Wisconsin Public Service Commission constitute "litigation" as that term is used in Section 206(a) (7) (A) of the Act [49 U.S.C. § 306(a) (7) (A)].

Webster defines "litigate" and "litigation" as follows:

"litigate * * * To make the subject of a lawsuit; to contest in law; to prosecute or defend by pleadings, evidence, and debate in a court; as, to *litigate* a cause. Also used figuratively."

"litigation * * * Act or process of litigating; a suit at law; a judicial contest; also, figuratively, dispute; discussion." Webster's New International Dictionary (1958).

Nothing has been presented to persuade us that Congress intended a figurative meaning; we believe that Congress intended the ordinary meaning of prosecuting or defending in court.

This conclusion is supported by the fact that the only other court which appears to have been called upon to construe the words "pendency of litigation" as used in this statute has reached the same conclusion. The reasons for the court's determination in Central Maryland Lines, Inc. v. United States, 240 F. Supp. 254, 258–259 (D.Md.1965), are equally valid whether applied, as there, to an initial application for an ICC certificate or, as here, to an application for additional authority. Cf. N. L. R. B. v. Botany Worsted Mills, 133 F.2d 876, 882 (3d Cir., 1943), cert. denied, 319 U.S. 751, 63 S.Ct. 1164, 87 L.Ed. 1705 (1943), in which it was held that the preliminary investigation and the hearing in a representation proceeding conducted by the NLRB leading to the certification of a bargaining representative is not "litigation."

Plaintiff also contends that on October 15, 1962, the October 4, 1962, determination by the Wisconsin Public Service Commission was still subject to judicial review. However, the fact is that no ju-

dicial review had been invoked as of October 15, 1962, and therefore there was no litigation in the courts on that date.

This action to annul, vacate and enjoin permanently enforcement of the order of the Interstate Commerce Commission entered June 15, 1965, is hereby dismissed, and the relief sought by plaintiff denied.